SCHLOM *v.* SCHLOM.*

(Division B.   Jan. 9, 1928.)

[115 So. 197.   No. 26806.]

DIVORCE.  *Equity.   Where divorced husband cares for child, court may
diminish joint allowance of alimony for wife's and children's
support; equity maxim of clean hands held not applicable to hus-
band promptly asking reduction of alimony, where court did not
promptly act.*

Where, in a divorce decree, the wife was awarded the custody of
the children and a joint allowance of alimony for the support
of herself and the children, and where, subsequent to such de-
cree, the wife called on her husband to send the money direct to
one of the children, and requested that he take care of another
one of them, which the husband does, a chancery court has
jurisdiction to diminish the amount of money to be paid to the
wife.  In such case the maxim that he who comes into equity
must come with clean hands is not applicable against the hus-
band, where he filed his petition for a reduction of alimony
promptly with the court but the court did not promptly act there-
on.

*Corpus Juris-Cyc. References: Divorce, 19CJ, p. 275, n. 87; Equity,
21CJ, p. 190, n. 75.        o

APPEAL from chancery court of Washington county.
HON. J. L. WILLIAMS, Chancellor.

Suit between C. L. Schlom and Nellie E. Schlom for
divorce.  Decree of divorce for Nellie E. Schlom, with
a joint allowance of alimony for her support and sup-
port of children.  Application by C. L. Schlom to dimin-
ish the allowance.  From an adverse judgment, the ap-
plicant appeals.  Reversed and remanded.

*Watson & Jayne,* for appellant.

The Chancellor in dismissing appellant's petition and taxing him with the cost in the proceeding based same on the maxim "He who comes into equity must come with clean hands." We will discuss this case with regard to that maxim and that alone, as that is the only question involved in this appeal. Appellant respectfully submits that the Chancellor in his wise discretion in invoking the above-mentioned maxim places entirely too harsh a construction on the maxim when applied to the facts involved in this case. We do not believe that the facts and circumstances involved in this cause justify the invoking of this maxim at all. The best definition of the meaning and purpose of the Equity maxim here under consideration is given in Griffiths Chancery Practice, p. 45, par. 42; See, also, 1 Pomeroy Equity Jurisprudence (4 Ed.), p. 738, par. 397; Lewis's Appeal, 67 Pa. St. 166. We have searched diligently to find, if possible, a decision based on facts similar to the case at bar wherein the maxim had been invoked but have been unable to find anything closer than the examples set out by Pomeroy and other writers on Equity in the matters of specific performance of contracts and where fraud has been practiced and where complainant was seeking an undue advantage over the defendant, or where to grant the relief prayed would work some harsh injustice to the defendant. In every instance we find that the maxim refers only to wilful misconduct and is based upon conscience and good faith. See Pomeroy Equity Jurisprudence, par. 398. And as broad as the principle is in its operation it must be taken with reasonable limitation.

*Wynn & Hafter,* for appellee.

Counsel in their brief state that they searched diligently and found no case in point. The question involved has been passed upon in a great many states, and we now especially direct the attention of the court to a comparatively recent case decided by this honorable court where-

in the position taken by the Chancellor was sustained. We refer to the case of *Guess* v. *Smith,* 100 Miss. 457, 56 So. 166. Appended to *Smith* v. *Guess,* is an editorial note appearing on p. 302 of Ann. Cas. 1914A, from which we quote as follows: ''The weight of authority is in accord with the above-reported case to the effect that when an award of alimony or *an installment* of such award becomes due and payable, the right therefore is vested and the court has no authority or power to modify the order in respect thereto.'' Citing many cases, which see. Thus it will be seen from the foregoing authorities that Mississippi is in line with the great majority of states in holding that past due installments of alimony become a vested right which the Chancellor had no authority or power to cancel. In the absence of statute a court loses jurisdiction over its decree after the adjournment of the court during which the decree was rendered. However, this has been modified by statute section 1673, Code of 1906, in respect to decrees affecting alimony. But this authority only applies to future installments of alimony which have not become the vested right of the wife. We find a very able discussion of the effect of section 1673, Code of 1906, in *Williams* v. *Williams,* 127 Miss. 627, 90 So. 330. In *Robison* v. *Robison,* 112 Miss. 224, 72 So. 923, it is held that in any question involving the modification of a decree of divorce the husband and wife are considered as legal strangers.

Argued orally by *W. S. Watson,* for appellant, and *Jerome Hafter,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee obtained a divorce from the appellant, with an allowance of two hundred fifty dollars per month alimony for herself and children, and the custody of the four children of said marriage. Subsequently, one of the children, at the suggestion of the appellee, went to live with his father. It appears that the appellee had

149 Miss.—8.

been sick, and suggested to the son that he could go to
his father, if he so desired, and the son did go and live
with his father, who filed a petition in the chancery court
for a modification of the decree. Subsequently, the ap-
pellee wrote the appellant with reference to a daughter
as follows: "From now on I want you to take care of
Zelda and send her the money yourself." The daughter
also wrote the appellant a letter stating that her mother
had written her stating that she must leave college and
take a business course, and go to work, and that she did
not desire to leave college, and asked' her father to send
her share of the money direct to her. Appellant there-
upon filed another petition to have the decree for ali-
mony modified, setting up in the two petitions that he
had complied with the order of the court by paying the
amount required, but that he withheld fifty dollars for
each of said children, and that he was out more than that
amount of money in taking care of them. For some rea-
son the court was not held at the return term, and the ap-
pellant continued to withhold fifty dollars for each of
said children from the amount decreed to be paid, send-
ing the wife the balance, one hundred fifty dollars, per
month.

The appellant testified to both statements of facts,
and then introduced his son, who testified that he went
to live with his father because his mother told him he
could do so if he thought best. The appellee was not rep-
resented by counsel in the court below, but, on cross-ex-
amination of the son, the following questions were pro-
pounded by her and the following answers given:

"Q. Son, wasn't it the reason I sent' you to your
father, I was sick and unable to care for you, wasn't that
the cause, I thought best? A. You were up.

"Q. Wasn't I operated on and sick, and could not
care for you, and told you I thought it best for you to
go to your father—tell the truth, don't be afraid. A. I
am not afraid to tell the truth. You were sick at one
time, but up when you told me that.

"Q.  I was sick and unable to care for four children and thought it was best and told you to go to your daddy. A.  You cared for the others; you could have cared for me."

As stated, the appellee did not testify, and, on hearing the testimony showing substantially all the above, the court dismissed the petition for a modification.

It is stated in the argument and briefs that the chancellor did not act on the theory that the complainant came into court with clean hands. It will be noted that the decree was for a joint allowance for the wife and four children. It appears that Zelda, a daughter, was a young lady in college, and the son about fourteen years of age. There was one daughter between Zelda and the son and another child younger than the son. It appears from the evidence without dispute, and from the questions of Mrs. Schlom, that the son was placed with the father by her consent, and that she requested the father to send the daughter the money direct. It further appears, without dispute, that the appellant paid the full amount allowed by the decree for alimony, but did not pay the full amount to the wife. It is argued that the money belonged to the wife and was a vested right which could not be disturbed by a subsequent decree. We think this is a misconception of the case. The money did not belong to the wife entirely. It was paid to her to use for the support of herself and children, and, in addition to the money so allowed, she was allowed the use of the home, and the husband was required to keep all the taxes and insurance paid thereon.

It appears from these facts that the chancellor should have allowed some relief, and made some modification of the decree. That would not necessarily have meant that each one had a *pro rata* of the allowance awarded, but the amount due by the husband for the support of the wife and four children was a gross sum in which each had an equity, and, when the wife consented for the son to go to his father and for the father to send the daughter her

share of the money, this necessarily called for an equitable reduction of the amount of money paid to the wife, the exact amount to be determined from all the circumstances in the case. The maxim that he who comes into equity must come with clean hands is not applicable herein to prevent the relief prayed for. The husband properly filed his petition, and, if he misjudged the amount which ought to be abated, he could have an equity court determine that fact. We think it clear, under the facts and testimony, that there should have been some abatement of the allowance, and that the husband was not required to send the wife two hundred fifty dollars per month and also to spend an additional amount for the support of the children.

The judgment of the court below will be reversed, and the cause remanded for a new hearing.

*Reversed and remanded.*