866 So.2d 494 (2004)
Henry J. COOK, III, Appellant,
v.
Ginger Cook WHIDDON, Appellee.
No. 2000-CA-01776-COA.
Court of Appeals of Mississippi.
February 24, 2004.
*496 Henry J. Cook, III, pro se.
David D. Powell, Michael D. Haas, Richard Lynn Ducote, for appellee.
Before KING, P.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the court.
¶ 1. Henry J. Cook III and Ginger Cook, now Ginger Whiddon, were divorced in June 1997. Thereafter, numerous motions for contempt and modifications were filed by both parties. A final judgment on all motions was entered in September of 2000. Aggrieved by the chancellor's decision, Cook has appealed, asserting that the chancery court erred: (1) in granting his ex-wife a judgment for pre-divorce support, (2) in using the "clean hands" doctrine to bar his request for a reduction in his child support obligation since he owed no temporary spousal support, (3) in applying the "clean hands" doctrine by ignoring the Schlom rule, (4) in not giving him credit, as child support for his payment of the children's private school tuition, (5) in awarding attorney fees to his ex-wife, (6) in computing child support in the final judgment, (7) in permitting extraordinary delays in the bringing of issues before the court, (8) in computing fees for copying the chancery clerk's papers, and (9) in allowing the entry of a judgment replete with errors and mistakes.
¶ 2. We find merit in Cook's assertion that the trial court erred in its application of the "clean hands" doctrine; therefore, we affirm in part and reverse and remand in part.

FACTS
¶ 3. Cook and Whiddon's divorce was granted on the ground of habitual cruel and inhuman treatment. The chancellor granted Cook and Whiddon joint legal custody of the couple's three minor children, with Whiddon having physical custody and Cook having reasonable weekend and holiday visitations. Cook was also ordered to pay child support in the amount of $977 per month.
¶ 4. In July of 1997, one month following the entry of the final judgment of divorce, Whiddon filed a motion for contempt, alleging that Cook had failed to pay court-ordered child support and temporary pre-divorce support. Cook responded by answering and filing a counterclaim and a motion to modify the judgment of divorce. He asserted that he had suffered a material change in circumstances that rendered him unable to pay the child support payments in the amount provided by the divorce decree and requested modification of that amount. Cook claimed that, since the judgment of divorce, he had been forced to *497 close his law practice and had been declared 80% disabled based on his physical and mental health. Following a hearing in September of 1997, Chancellor Shannon Clark found Cook in arrears in the amount of $3,715 for child support. The chancellor ordered Cook to pay $822 per month of the previously ordered $977 child support obligation, with the remainder of the monthly support to be paid on his behalf by the Veteran's Administration. The court also ordered Cook to pay an additional $500 per month in back child support until his arrearage was paid in full.
¶ 5. In February 1998, Whiddon filed yet another motion for contempt, alleging that Cook had failed to pay his child support obligations. A hearing was held on March 10, 1998, and the chancellor found that Cook should have paid $25,000 to Whiddon in pre-divorce support. After a number of credits and set-offs totaling $19,098.77, Cook was found to be in arrears in his pre-divorce support of $5,901.23. The chancellor also found that Cook should have paid $5,862 in child support from October 1997 through March 1998. However, he had only paid $2,372 to Whiddon, and the Veteran's Administration had paid $930, for which Cook was given credit. He therefore had a total child support arrearage of $2,560. As a result of the hearing, the chancellor entered a judgment for Whiddon in the amount of $8,461.23. In August of 1998, Whiddon and the children moved to Tennessee. Cook filed a motion for ex-parte emergency relief. The chancellor directed Whiddon to return the children to Mississippi until a hearing for temporary relief could be held. However, before the hearing date, the chancellor permitted the children to return to Tennessee with their mother.
¶ 6. In July of 2000, a trial was held to decide all previously filed and not yet decided motions for modification and contempt. After three days of testimony, a different chancellor, Presiding Chancellor Donald Patterson, granted Whiddon sole legal and physical custody of the children and found Cook in contempt for failure to pay past due temporary spousal support and child support. The chancellor also found Cook in arrears on child support due at the time of trial. The court held that Cook had the ability to pay his child support obligation, and a reduction in child support was inappropriate. Whiddon was also awarded $3,000 in attorney fees because the court found that she did not have the financial ability to pay.
¶ 7. At the conclusion of the evidence the chancellor made findings of facts and directed Whiddon's attorney to draft a judgment and submit it for approval. This was done and submitted to the chancellor. After making numerous corrections to the proposed judgment, the chancellor signed the judgment and entered it in September 2000. It is from this final judgment that Cook appeals. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
Standard of Review
¶ 8. This Court's scope of review in domestic relations matters is strictly limited. Brawdy v. Howell, 841 So.2d 1175,-1178 (¶ 8) (Miss.Ct.App.2003). We will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of law, or a manifest error. Id. Thus, if we find substantial evidence in the record to support the chancellor's findings, we will not reverse. Id.
(1) Temporary Spousal Support
¶ 9. Cook first argues that the court erred in allowing Whiddon to recover $5,901.23 in temporary pre-divorce spousal support arrearage. Cook maintains that *498 his pre-divorce obligation is unenforceable because the temporary support was not incorporated into the judgment of divorce. Whiddon counters with the assertion that prior to the judgment of divorce, the court issued an order requiring Cook to provide monthly alimony payments in the amount of $2,500 per month.
¶ 10. We were unable to find in the record the temporary order to which Whiddon makes reference. However, we are satisfied that such an order exists inasmuch as Cook, in his answer to Whiddon's motion for contempt, admitted that he had been ordered to pay pre-divorce support.
¶ 11. We find no error on the part of the chancellor in allowing the arrearage and in holding Cook in contempt for failing to pay the temporary pre-divorce support. While Cook is correct in his contention that the temporary support order was not incorporated in the final judgment of divorce, that omission did not extinguish his then existing obligation to pay accrued pre-divorce support. Lewis v. Lewis, 586 So.2d 740, 742 (Miss.1991).
(2) Application of Clean Hands Doctrine
¶ 12. The chancellor determined that Cook's hands were unclean for failure to pay back child support and temporary alimony. Consequently, the chancellor refused to consider Cook's petition for modification, ruling that the petition would not be considered until Cook became current in the aforementioned obligations. However, the chancellor did allow Cook to proffer testimony concerning his changed circumstance.
¶ 13. The doctrine of "unclean hands" declares that "he who comes into equity must come with clean hands." Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss.1970). In other words, the clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of wilful misconduct in the transaction at issue. Bailey v. Bailey, 724 So.2d 335, 337(¶ 6) (Miss.1998). Our supreme court has set out the proper course a party should take when he is unable to meet his support obligations. Gambrell v. Gambrell, 644 So.2d 435, 441 (Miss.1994). If a party is unable to comply with a divorce decree, he should, with reasonable promptitude, make that fact known to the court by proper petition and have the decree modified or suspended, and not wait until he has been cited for contempt. Id.
¶ 14. Chancellor Patterson held that unless Cook could show that he was current in his child support obligation, he would refuse to hear any request or evidence pertaining to modification of child support. Cook contends that the trial court should have followed the ruling in Schlom v. Schlom, 149 Miss. 111, 115 So. 197 (Miss.1928), in considering his request for reduction. In Schlom, the court held that the clean hands doctrine did not apply to a father who voluntarily reduced his child support payments only after he filed his petition for modification.
¶ 15. In contrast, the case-at-bar is readily distinguishable from Schlom. Here, Cook was in arrears at the time he filed his motion for modification of child support which was not filed until after Whiddon had filed her motion seeking to have him held in contempt for failure to make child support payments. Cook's reliance on Schlom is misplaced. The evidence supports the finding that Cook came into court with unclean hands.
¶ 16. Although we agree with the chancellor that Cook came into court with unclean hands, our task does not end there. We must now determine if he left with unclean hands so as to prevent any modification of his future child support obligations *499 until after he has paid all arrearage.
¶ 17. We find the case of Brennan v. Brennan, 605 So.2d 749, 753 (Miss.1992), helpful to the resolution of the issue before us. In Brennan, the trial court dismissed a petitioner's petition for modification because he was found to have unclean hands. Id. Apparently, prior to dismissing the petition, the chancellor made findings of fact regarding the petitioner's dereliction of previous court ordered obligations and entered a judgment for all delinquent obligations.[1] On appeal, our supreme court determined that the entry of the final judgment in the trial court operated to cleanse the petitioner's unclean hands and revive, for consideration of modification purposes, the original judgment of divorce which the petitioner was seeking to modify. Id.
¶ 18. The only difference between Brennan and the case before us is that in Brennan, the final judgment, disposing the petition for modification, recited that the petition was dismissed, while here, there are two judgments, an interim judgment, which does not mention Cook's motion for modification, and the final judgment which states that the motion for modification is denied. At first blush, it might appear that because in Brennan the petition was dismissed, a dismissal of the initial petition for modification and a refiling are required before the court may consider a modification petition from the person who possessed unclean hands when the petition was filed. However, closer scrutiny of the language employed by the Brennan court reveals that not to be the case. This is what the court said:
We affirm the judgment of the lower court in those respects [dismissing the parties' petitions] but hold that by entry of the final judgment, the lower court cleansed the hands to the parties and that from and after the date of the final decree, the matter of modification of the previous divorce decree dated October 25, 1984, may be revived in this case and the cause is remanded to the lower court for that purpose.
Brennan, 605 So.2d at 753.
¶ 19. It is noteworthy that, in Brennan, it was the entry of the final judgment for the amount of the arrearage, as opposed to payment of the arrearage, that cleansed the hands of the defaulting obligor. Therefore, it seems obvious that, if it is the entry of the subsequent judgment for accrued child support that revives the matter of the modification of the initial judgment ordering support, the fact that Cook's petition for modification was not dismissed, as was the petition in Brennan, is totally immaterial. It also seems immaterial that the cleansing judgment here was an interim judgment as opposed to a final judgment.
¶ 20. The cleansing judgment, which was signed on May 13, 1998, and entered on May 22, 1998, was not an appealable judgment in that it did not settle all the issues before the trial judge and was not entered pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure which permits the entry of a final judgment as to one or more but less than all of the claims in a given action. The judgment rendered on September 18, 2000, and entered on September 20, 2000, was the only appealable judgment rendered in this cause since neither of the earlier judgments decided *500 all the issues or was entered pursuant to Rule 54.
¶ 21. Although the May 22, 1998 judgment, effective retroactively to September 25, 1997, was not an appealable judgment, we see no reason why, for purposes of the Brennan analysis, it should not be controlling since it was the first judgment that was entered after the trial court specifically refused to hear Cook's motion for modification due to the fact that Cook came into court with unclean hands. Further, it was in this judgment that the trial court first adjudicated all child support arrearage and gave Whiddon a judgment for the delinquent amount. We see no meaningful distinction, for purpose of application of the clean hands doctrine, between this judgment, though not appealable, and the final judgment in Brennan. In both cases, the judgments adjudicated the amount of child support that was due and owing prior to the date of the hearing on the petition for modification and held the defaulting petitioner responsible for that amount.
¶ 22. Consequently, based on Brennan, we affirm the final judgment of the trial court with respect to that court's finding that Cook was in arrears in September 1997 for child support in the amount of $3,430 and pre-divorce spousal support in the amount of $5,901.23. However, we reverse and remand the trial court's finding of child support arrearage for the entire period following the September 25, 1997 hearing, for we hold that the entry of the judgment on May 22, 1998, effective retroactively to September 25, 1997, cleansed Cook's hands. Consequently, the judgment for current child support in the amount of $7,815.50 and the judgment for child support accruing for the period from October 1997 through March 10, 1998, in the amount of $2,560 are reversed and remanded for further consideration. Any order entered on remand regarding the modification of Cook's child support obligation shall be retroactive, in the discretion of the chancellor, to either July 8, 1997, the date of the filing of Cook's petition for modification, or to September 25, 1997, the effective date of the judgment cleansing Cook's hands. Cook shall be responsible for whatever amount the chancellor determines is the appropriate amount should the chancellor determine that a modification is appropriate. Based on the facts testified to by Cook regarding his changed circumstances, it seems that a modification will be appropriate but that issue is not now before us.
(3) Credit for School Tuition
¶ 23. Cook argues that he should have been given credit for the $4,880 in school tuition he paid for his children for the 1997-1998 school year.
¶ 24. Cook cites Collins v. Collins, 722 So.2d 596 (Miss.1998) and Southerland v. Southerland, 816 So.2d 1004 (Miss.2002) to support his argument that the private school tuition should have been allowed as a setoff of his child support obligation. In both cases, our supreme court allowed the payment of court ordered private school tuition to be considered as a part of the obligor's child support obligation. The instant case can be distinguished in that Cook was not ordered to pay private school tuition by court order. Instead, he voluntarily made the payments. Here, the chancellor held that Cook was not entitled to credit for the private school tuition payments. The chancellor reasoned that "a parent responsible for child support under a judgment is not entitled to credits for voluntary expenditures made in behalf of the child in a manner other than that specified in the judgment." The chancellor further reasoned that "to permit a parent credit for voluntary payments would allow such parent to vary the terms of the judgment, and to usurp from the custodial *501 parent the right to determine the manner in which support money should be spent." We agree with the chancellor. The chancellor was well within his discretion in determining that Cook should not be given credit for the school tuition, and nothing in the record suggests that the chancellor abused his discretion. Therefore, this issue lacks merit.
(4) Attorney Fees
¶ 25. Cook next asserts that the court erred in awarding attorney fees to Whiddon. He argues that since Whiddon had assets from which an attorney could be paid, no award of attorney fees should have been made to her.
¶ 26. Determination of attorney fees in divorce matters is largely within the sound discretion of the chancellor. Smith v. Smith, 614 So.2d 394, 398 (Miss. 1993).
¶ 27. Cook relies heavily on Cameron v. Cameron, 276 So.2d 449 (Miss.1973) to support his argument. The court in Cameron held that a divorced wife was financially capable of paying her attorney, thus an award of attorney fees to her was error. Id. at 450. The court found that the financial situation of the wife was superior to that of the husband. Id. We find Cameron inapplicable because Cameron involved attorney fees in an initial divorce action, while our case involves attorney fees in a contempt action.
¶ 28. The chancellor found Cook in contempt for not paying his pre-divorce spousal obligations and for not meeting his child support obligations. Our supreme court has consistently held that when the court denies a spouse's petition for contempt, no award of attorney fees is warranted. Lahmann v. Hallmon, 722 So.2d 614, 623(¶ 34) (Miss.1998). Since Whiddon was successful on her motion for contempt, it follows that she is eligible for an award of attorney fees. However, since there were two contempt hearings following the hearing in which Cook's hands were cleansed, and since the amount of attorney fees was not allocated on a per hearing basis, we reverse and remand for further consideration the amount of the award of attorney fees. We find that Whiddon is entitled to an award of attorney fees for the successful prosecution of her first motion for contempt.
(5) Error in Computation
¶ 29. Cook argues that the trial court erred in its computation of child support in the final judgment of modification. Cook maintains that the court failed to consider previously paid support totaling $2,372. Specifically, Cook alleges that he was given credit for $2,372 by Chancellor Clark in an order dated May 23, 1998 and filed May 22, 1998. However, as previously observed, Cook claims that he was not credited with this amount in the final judgment of modification entered on September 20, 2000. Our review of the record reveals that Cook is mistaken in this regard. However, in light of our holding reversing the child support provision in the judgment entered as a result of the March 10, 1998 hearing, it is not necessary that we further consider the issue.
(6) Extraordinary Delays
¶ 30. Cook next argues that the court erred in allowing extraordinary delays in the bringing of issues before the court. He contends that these delays deprived him of joint custody of his children, and deprived him of an opportunity to be heard on his motion for modification of child support payments.
¶ 31. Cook's assertion that he was deprived of joint custody due to numerous delays is unsupported by the record. The chancellor found by clear and convincing evidence that it would be in the best interest *502 of the children that joint legal custody be terminated. The chancellor pointed out that "over a period of three years the parties have had nothing but acrimony, disagreements, failure to confer, and failures to communicate." We find no error in the chancellor's decision to terminate joint custody. This contention is without merit.
¶ 32. Next, Cook asserts that the delays deprived him of an opportunity to be heard on his motion for modification of child support payments. Our resolution of issue two makes it unnecessary to discuss the effect of the delay on Cook's motion for modification since the modification issue is remanded for further consideration.
(7) Computation of Costs of Chancery Papers
¶ 33. Cook alleges that the trial court erred in computing costs associated with copying the chancery clerk's papers. Cook maintains that the amount should have been 50 cents per page instead of the court ordered $2.00 per page. Cook was charged $2.00 per page for 518 pages, totaling $1,036. The chancellor found that the legislative intent in Miss.Code Ann. § (6) (Rev.2003) was to fix a uniform fee of $2.00 per page for all officers making and certifying copies of records or papers which they are authorized to copy and certify. Cook contends that the wrong statute was used because section 25-7-13 applies to circuit clerks and not chancery clerks.
¶ 34. Cook relies on section 25-7-9(1)(e) to support his proposition that he should have been charged 50 cent per page. Cook maintains that this statute is more appropriate because it governs the fees for chancery clerks, unlike section 25-7-13, which governs circuit clerk fees. The case of McDonald v. McDonald, 850 So.2d 1182 (Miss.Ct.App.2002) is clearly on point. In McDonald, this Court found that the lower court did not abuse its discretion when it ordered a former husband to pay the statutorily authorized fee of $2.00 per page for the transcript of records in a divorce proceeding. Id. at 1191(¶ 34). The Court found that though the only specific statute relating to making copies of final records and transcripts may be in a statute generally related to circuit clerks, the statute specifically provides that all other officers may be charged the same. Id. at (¶ 31). Therefore, section 25-7-13(6) is the appropriate statute for the chancery clerk. Id. The Court in McDonald also noted that section 25-7-9 permits a chancery clerk to charge 50 cents when the clerk makes an uncertified copy of a recorded document to give to a member of the public. Id. at 1190(¶ 29). The evidence does not show an abuse of discretion in the chancellor's decision to require Cook to pay the statutorily required amount. Therefore, the chancellor's ruling on this issue is affirmed.
(8) Entry of Judgment
¶ 35. Cook finally contends that the court erred in signing and allowing the entry of a judgment that was filled with errors and critical omissions. Cook alleges that the entered judgment differs from the opinion rendered from the bench on July 15, 2000.
¶ 36. The law is well settled that all courts have the inherent power to correct clerical errors at any time and to make the judgment entered correspond with the judgment rendered. Wilson v. Town of Hansboro, 99 Miss. 252, 54 So. 845, 846 (1911). The errors may also be corrected on the motion of any party, up until the time the record is transmitted by the clerk of the trial court to the appellate court. M.R.C.P. 60(a). Further, a chancellor's bench ruling is not final, but is subject to modification by that same chancellor. Grey v. Grey, 638 So.2d 488, 492 *503 (Miss.1994). The chancellor's decision is not the same thing as the court's final judgment. Id. Only a final judgment is appealable. Id.
¶ 37. Since the bench opinion is not a final judgment, Cook has no basis for appealing from it. We note that prior to this case being forwarded to this court for a decision, the supreme court entered an order permitting Cook's request that the record be supplemented with a judgment entered February 26, 2002, approximately fifteen months after the notice of appeal was filed. That judgment appears to address the concerns raised by Cook in this issue. Since that judgment does not supersede the September 2000 judgment from which this appeal emanates, we do not address this issue any further. Therefore, the chancellor's ruling on this issue is affirmed.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED THREE-FOURTHS TO THE APPELLANT AND ONE-FOURTH TO THE APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, CHANDLER and GRIFFIS, JJ., CONCUR.
THOMAS, and MYERS, JJ., NOT PARTICIPATING.
NOTES
[1] The specific findings of fact and ruling are not included in the facts of the opinion, but it is obvious from the holding of the opinion that the trial court's ruling and findings of fact addressed the parties' failure to comply with prior directives of the court, and a judgment against the defaulting party was entered accordingly.