MYERS, P.J.,
for the Court.
¶ 1. Kelly Jones McQuage filed suit in. the Chancery Court of DeSoto County seeking to enroll the “Permanent Parenting Plan” entered in Shelby County, Tennessee, on August 14, 2002, and for modification of that decree. Grady Watson Jones, III, responded stating that he did not contest the enrollment of the decree, but that another decree dated February 14, 2003, modified the August 14, 2002 decree. Additionally, Grady contested the modifications of these prior decrees. A hearing was héld on July 30, 2004, before the Honorable Percy L. Lynchard, Jr. The Chancery Court of DeSoto County enrolled and then modified the Tennessee decree. Grady appealed raising numerous errors by the trial court. This court has reduced these numerous issues into the following issue:
I. WAS THERE MANIFEST ERROR IN CHANGING THE AGREED CUSTODY AND VISITATION PLAN ENROLLED FROM TENNESSEE?
STATEMENT OF FACTS
¶ 2. Grady W. Jones, III and Kelly Jones McQuage were married in Tennessee on January 29, 1994. One child, Alexis, was born of this marriage on August 31, 1994. Grady filed for divorce on September 10, 1999, in Shelby County, Tennessee and a final decree was entered on May 15, 2000. Incorporated into this decree was a “Marital Dissolution Agreement” which provided for the shared joint custody of Alexis.
¶ 3. Between the time of the final divorce decree and the case at bar, child custody and visitation were modified three times. Six months following the entry of the final decree, Kelly petitioned the Tern nessee Court to modify the final custody and visitation schedule entered at the time of the final divorce decree. Twenty-one months of litigation followed this petition resulting in the “Permanent Parenting Plan” entered on August 14, 2002. This plan had been negotiated between the parties and was entered as an agreed plan. Due to a clerical error in the plan, a modification was entered on February 14, 2003. This modification corrected an error caused by the failure to “check the box” that indicated that during the summer the father would be allowed the same visitation schedule as during the school year. Additional changes included Kelly being responsible for providing a caregiver or daycare, delineation of winter vacation schedule, and modification to scheduled holidays. Both the plan and modification represent the agreement between Grady and Kelly as to custody and visitation of their daughter. This decree provided that the parents would have joint custody and share in all decisions regarding education, non-emergency health care, religious upbringing, and extracurricular activities. Additionally, the visitation schedule included that Grady would have visitation every other weekend and every Tuesday from the time Alexis was released from school until her return on Wednesday. Summer visitation would be the same as the school year except Grady would be given four weeks and Kelly would be given two weeks each summer that they designated to the other by May 15 of that year.
¶ 4. On June 5, 2003, less than four months after the entry of the modification, Kelly petitioned the Chancery Court of *848 DeSoto County to enroll the August 14, 2002, Tennessee decree without mentioning the February 14, 2003 modification and then requested that the decree be modified. Grady answered the petition, asserting he had no objection to the enrollment of the Tennessee decree, but requested that the February modification also be enrolled. On February 4, 2004, a motion to amend the petition was entered by Kelly. The amended petition was entered seeking modification of Grady’s obligation to provide medical insurance and of the visitation schedule exercised by him. Again, there was no mention of the February 2003 modification.
¶ 5. A trial was held on July 30, 2004, in which each side was given one hour to call witnesses, cross-examine witnesses and present its case. At the beginning of the trial the parties entered into the record an agreed modification of the summer visitation schedule. This modification allowed for alternating weeks of custody during the summer. The modification provided that Kelly would have six weeks and Grady five weeks summer custody during even years and the reverse in odd years. The trial was then held to determine whether a material change had occurred to warrant a change of custody and whether the visitation schedule was not working to justify a modification. Only the parties were called as witnesses and several items were admitted for evidence or identification. These items included e-mails between the parties, copies of homework folders, and documents.
¶ 6. Following the trial in DeSoto County, modifications to both custody and visitation were entered. Kelly was given sole custody of Alexis. The visitation schedule was modified from the Tennessee decree to the “Farese” plan with the agreed summer visitation schedule. From this ruling Grady appealed.
STANDARD OF REVIEWS
¶ 7. In reviewing a chancellor’s findings in a domestic matter, this Court has limited discretion. “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)(quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). “We will not reverse a chancellor’s findings of fact where they are supported by substantial evidence in the record.” Weigand v. Houghton, 730 So.2d 581 (Miss.1999).
¶ 8. For a moving party to obtain a change in custody “the moving party must prove by a preponderance of the evidence that since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by the like evidence that the best interest of the child requires the change of custody.” Ash v. Ash, 622 So.2d 1264, 1265 (Miss.1993) (quoting Pace v. Owens, 511 So.2d 489, 490 (Miss.1987)).
¶ 9. To obtain a change to the visitation schedule, the moving party need only show that the current visitation schedule is not working and that it would be in the best interest of the child to change the visitation schedule. Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986).
DISCUSSION
¶ 10. In its order, ruling that joint custody should be terminated and sole custody should be vested in Kelly, the court stated that there had been a material change in circumstances and that a change would be in the best interest of the child. *849 Additionally, the court stated that the visitation schedule was not working and that it should be modified to the “Farese” plan. The trial court properly announced the legal standards to change custody and visitation, but we find that the facts of this case do not exhibit a material change, the visitation schedule was not given an opportunity to work, that the trial court was manifestly wrong and that the Tennessee decree should be reinstated.
¶ 11. The court pointed to several issues that the court believed to be material changes. The first of these changes was acrimony, disagreement, failure to confer, and failure to communicate between the parties. The court pointed to our decision in Cook v. Whiddon, 866 So.2d 494 (Miss.Ct.App.2004), as authority for this change in circumstances. The trial court concluded that the parties prior modifications of the “Permanent Parenting Plan” and the numerous e-mails entered as exhibits demonstrate that the parties are unable to agree on issues relating to the child.
¶ 12. This case and Cook are not similar. In Cook the parties had filed numerous motions for contempt against one another starting almost immediately after the entry of the final divorce decree. Additionally, the husband in Cook failed to pay child support and filed a motion to prevent the wife and children from moving to another state. The chancellor found that “over a period of three years the parties [had] nothing but acrimony, disagreements, failure to confer, and failures to communicate.” We held that the chancellor did not abuse his discretion in basing his ruling on the facts of that case. The case at bar does not rise to the level of continued litigation as Cook. The only litigation in this case between the final divorce decree and the current suit are the August 14, 2002 “Permanent Parenting Plan” and the February 14, 2003 modification that corrected a clerical error that had been agreed upon by the parties for the August decree. This is not a continuous series of litigation that rises to a material change to warrant a change of custody.
¶ 13. The next change that the court considered as material was the remarriage of Grady and the involvement of the stepmother, Molly, in the activities of Alexis. Mississippi law has long held that remarriage is not a material change in circumstance to justify the change of custody. Allen v. Allen, 243 Miss. 23, 33, 136 So.2d 627, 632 (1962). At the time of the hearing Grady and Molly had been married almost four years. This remarriage was not a change in circumstance since Grady was remarried prior to both the August 2002 plan and February 2003 modification. The trial court points to the interference of Molly in the activities in which Alexis is involved. From the record there is no presentation that Molly over-stepped her bounds as the stepmother. She did try to participate in school activities that Alexis was involved in and support Grady in his participation. The testimony of Kelly that she was uncomfortable around Molly is not sufficient to be a material change in circumstances that is adverse to the child. The involvement of a stepparent in the lives of their spouse’s children should not be hindered by courts, but encouraged.
¶ 14. In replacing the visitation schedule laid out in the Tennessee decree with the “Farese” plan, the trial court stated that the standard for modification was that the current plan is not working. That is true. Cox, 490 So.2d at 869. However, the visitation plan should be given an opportunity to work. Kelly filed suit for the modification of the agreed “Permanent Parenting Plan” less than four months following its entry. The court points to the plan’s Tuesday overnight stays with the father as having a detrimental effect to the *850 best interest of the child. In its ruling, the court points to Alexis receiving Bs in spelling, which she studies with Grady on Tuesday nights, compared to As in all her other courses. Kelly testified that Alexis was an Honor Roll Student, but felt she could be on the Principal’s List. We do not find that the difference between an A and B in course work is substantial enough to justify modification of visitation.
¶ 15. The second area the court points to as the visitation schedule not working are the tardies that had been received by Alexis for early checkout from school by Grady on the days that he had custody. There is evidence in the record that the tardies did not occur on days that Grady had visitation with Alexis, but rather days that Kelly had custody. Also, several of these tardies occurred prior to the entry of the February 2003 modification. There was testimony that Alexis had been tardy eighteen times and Kelly admitted to being the source of six to seven of those tardies. From the record Kelly was the source of the tardies and therefore they should not have been counted against Grady as a reason for modification of visitation.
CONCLUSION
¶ 16. The record does not support the findings of the trial court. There is not a preponderance of the evidence that supports a material change in circumstance from the prior decree that is adverse to the child to merit a change in joint custody. The almost immediate filing of a petition for modification of the Tennessee decree did not give the plan an opportunity to work. The parties had agreed to the plan after almost two years of negotiations. The Tennessee decree provides for a definite visitation and holiday schedule and allows both parents to be involved in the major decisions concerning Alexis. This court sees no problem with the Tennessee agreement between the parties nor any material change that would merit a modification of that agreement. The agreed modification of the summer visitation schedule entered into the record by the parties should be honored.
¶ 17. THE JUDGEMENT OF THE DESOTO COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE CHARGED TO THE AP-PELLEE.
KING, C.J, LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.