GRIFFIS, J., for the Court.
 

 ¶ 1. Rhonda Lynn Blackwell Kittrell Farrior (“Rhonda”) appeals the chancellor’s ruling in a dispute with her ex-husband, Kendall Kurt Kittrell, Sr. (“Kendall”), regarding the payment of child support, medical expenses, and private school tuition. The chancellor held that Kendall owed Rhonda $10,705.86, but Kendall was given credit for a vehicle that he gave to Rhonda and payments he made for private school tuition so that the total owed was $305.86 plus $4,500 in attorney’s fees. On appeal, Rhonda claims that the chancellor abused his discretion when he: (1) disregarded the clean hands doctrine; (2) gave Kendall credit toward his past due medical insurance, medical bills, and child support; and (3) failed to provide specific findings of fact and conclusions of law. Finding error on the part of the chancellor, we affirm in part, reverse and render in part, and reverse and remand in part for proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 2. Rhonda and Kendall were divorced on February 7, 1992. The couple had two children during their marriage — Kurt and Kyle. Rhonda received primary physical custody of both children in the divorce. In
 
 *22
 
 1993, Kendall sought to change custody, but his request was denied.
 

 ¶3. On January 8, 2006, the younger son, Kyle, went to stay with Kendall and refused to return to Rhonda’s house. Because of Kyle’s disciplinary problems, Rhonda allowed Kyle to stay with his father. However, when Rhonda learned that a woman was spending the night at Kendall’s house, she demanded that Kyle return home with her. On February 21, 2006, Kendall sought to change custody of Kyle by filing his complaint for change of custody and other relief. Rhonda answered the complaint and filed a counter-complaint for contempt and modification.
 

 ¶ 4. On April 26, 2006, Rhonda filed a complaint for writ of habeas corpus requesting that the Sheriff of Greene County return Kyle to her because she still had legal custody. After a hearing on the matter, the writ of habeas corpus was granted, and Kyle was returned to Rhonda’s custody. However, the day after Kyle was returned, Kyle left school and went back to Kendall’s house. Kendall filed a motion explaining that he had tried to get Kyle to stay with his mother, but Kyle refused to do so. After a hearing, the chancellor ordered that Kyle be examined by Dr. William P. Osborn. The chancellor further ordered that, until a final hearing was held, Rhonda would have visitation with Kyle every other weekend.
 

 ¶ 5. Kyle returned to live with Rhonda on October 2, 2006. After Kyle decided to return to his mother’s house, the issue of a change in custody was rendered moot. Thus, the only issues remaining for the chancellor were the unpaid child support, medical expenses, and private school tuition.
 

 ¶ 6. The first hearing was held on December 8, 2006, before the Honorable Pat H. Watts, Jr. The case was continued. Chancellor Watts subsequently retired. The second hearing was held on August 9, 2007, before the Honorable D. Neil Harris, Sr. Chancellor Harris determined that it was necessary for him to retry the case. He then heard testimony from both parties and entered the order from which Rhonda now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 7. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.”
 
 Samples v. Davis,
 
 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing
 
 Jundoosing v. Jundoosing,
 
 826 So.2d 85, 88(¶ 10) (Miss.2002)). “[We] will not disturb the chancellor’s opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 at 1064(¶ 9) (quoting
 
 Holloman v. Holloman,
 
 691 So.2d 897, 898 (Miss.1996)). Questions of law are reviewed de novo.
 
 Amiker v. Drugs for Less, Inc.,
 
 796 So.2d 942, 945(¶ 7) (Miss.2000).
 

 ANALYSIS
 

 1. Whether the chancellor abused his discretion by disregarding the clean hands doctrine.
 

 ¶ 8. Rhonda claims that the chancellor erred as a matter of law and abused his discretion when he disregarded the clean hands doctrine. Specifically, she claims that the chancellor found that Kendall was in willful contempt of the prior orders of the chancery court because of his failure to maintain medical insurance, pay his portion of the medical expenses, and pay child support. In response, Kendall contends that no language in the chancellor’s order finds that Kendall’s contempt was willful.
 

 
 *23
 
 ¶ 9. “The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.”
 
 Brawdy v. Howell,
 
 841 So.2d 1175, 1180—81(1122) (Miss.Ct.App.2003) (quoting
 
 Bailey v. Bailey,
 
 724 So.2d 335, 337(116) (Miss.1998)). The issue of unclean hands was not put before the chancellor at trial because the clean hands doctrine is typically used as a defense to a civil contempt action.
 
 See Banks v. Banks,
 
 648 So.2d 1116, 1126 (Miss.1994). Instead, Rhonda attempts to use it to deny Kendall any credit toward the amount he owes her.
 

 ¶ 10. From our review of the record, the chancellor made no finding that Kendall’s contempt was willful in nature. The chancellor recognized Kendall’s efforts to support his children and gave him credit for certain payments thereby reducing Rhonda’s award from $10,705.86 to $305.86. We cannot conclude, as Rhonda argues, that the chancellor found the type of willful misconduct that would constitute unclean hands on the part of Kendall. Accordingly, this issue is without merit.
 

 2. Whether the chancellor abused his discretion by giving Kendall credit toward his past-due medical insurance, medical bills, and child support.
 

 ¶ 11. The chancellor found Kendall in contempt for unpaid child support in the amount of $1,230, medical expenses in the amount of $7,485.86, and health insurance premiums in the amount of $1,990 for a total award of $10,705.86.
 
 [1]
 
 The chancellor then credited that amount by $6,000 that Kendall paid in private school tuition and $4,400 from the sale of a jeep that Kendall gave to Rhonda. Thus, the total award to Rhonda was $305.86 plus $4,500 in attorney’s fees.
 

 ¶ 12. Rhonda argues that the credits given to Kendall constitute an abuse of discretion on the part of the chancellor. Kendall responds that the credits are necessary to prevent the unjust enrichment of Rhonda.
 

 a. Private School Tuition
 

 ¶ 13. Kendall was given a $6,000 credit for estimated payments of private school tuition. The record is clear that the tuition payments were not ordered by the chancery court; instead, these payments were based on an agreement between the parties that Kendall would pay part of the children’s tuition.
 

 ¶ 14. This Court addressed this very issue in
 
 Cook v. Whiddon,
 
 866 So.2d 494, 500(1124) (Miss.Ct.App.2004). This Court held that when a parent chooses to make voluntary payments for private school tuition, he is not entitled to use those payments to set off his child support payments.
 
 Id.
 
 “[T]o permit a parent credit for voluntary payments would allow such parent to vary the terms of the judgment, and to usurp from the custodial parent the right to determine the manner in which support money should be spent.”
 
 Id.
 
 at 500-01(¶ 24).
 

 ¶ 15. We find that the chancellor failed to apply the applicable law on this issue; therefore, it was error to give Kendall this credit. Accordingly, the chancellor’s ruling giving Kendall a $6,000 credit for private school tuition is reversed and rendered.
 

 b. Proceeds from the Sale of the Jeep
 

 ¶ 16. Kendall was also given a $4,400 credit for the proceeds from the sale of a jeep. There was a factual dispute regarding the jeep. Kendall testified that
 
 *24
 
 the parties agreed that Kendall would give Rhonda the jeep to sell to cover his part of the children’s medical expenses. He claimed that the jeep had a $5,500 value at the time he delivered it to Rhonda.
 

 ¶ 17. Rhonda testified that the jeep was a gift for her son and that there was no agreement that the jeep proceeds should cover Kendall’s share of the medical expenses. Rhonda and her current husband kept the jeep for approximately one year. During that time, they had use of the jeep. Thereafter, the jeep was sold for $3,300. Rhonda used the proceeds to help pay down the note on her son’s vehicle.
 

 ¶ 18. It is not the role of this Court to redetermine questions of fact.
 
 Johnson v. Black,
 
 469 So.2d 88, 90 (Miss.1985). The chancellor heard conflicting testimony of both parties concerning the jeep. He found Kendall’s testimony credible and determined that Kendall should receive a setoff of his support obligation in the amount of $4,400 — -the average of $5,500 and $3,300. There is no evidence that the chancellor abused his discretion in making this finding. Accordingly, this issue has no merit.
 

 3. Whether the chancellor abused his discretion by failing to provide specific findings of fact and conclusions of law.
 

 ¶ 19. Rhonda asserts that the chancellor abused his discretion when he failed to make specific findings of fact and conclusions of law as required by his pretrial order. Kendall responds that there is no record of any requests for specific findings, and the language of the pretrial order was merely permissive and not mandatory.
 

 ¶ 20. Rhonda claims that her counsel requested specific findings in a conference with the chancellor. The pretrial order entered by the chancellor states, in part: “Counsel for both parties agree that the Court may listen to the tapes of this matter heard by Judge Bradley, Judge Pierce, and Judge Watts, hear the remaining testimony, review all documents placed in evidence and make findings of fact and apply the applicable law and enter judgment [sic] in this cause.”
 

 ¶ 21. Rule 52(a) of the Mississippi Rules of Civil Procedure states: “In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.” Rule 4.01 of the Uniform Chancery Court Rules further advises that:
 

 In all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon. The request must be made either in writing, filed among the papers in the action, or dictated to the Court Reporter for record and called to the attention of the Chancellor.
 

 ¶ 22. There is no record of any request by either counsel for specific findings of fact and conclusions of law. Rhonda’s counsel did not make such a request in writing or dictate it into the transcript. Rhonda merely points to the pretrial order which gives the chancellor the option to listen to the previous testimony in the matter and make findings of fact and apply the law. There is no requirement in the pretrial order that the chancellor “find the facts specially and state separately his conclusions of law thereon.”
 
 Id.
 

 ¶ 23. The supreme court has held that: “in complex cases tried upon the facts without a jury, M.R.C.P. 52 should be construed to read that the court ‘generally
 
 *25
 
 should’ find facts specially and separately state its conclusions of law thereon even absent a request by a party.”
 
 Century 21 Deep S. Props., Ltd. v. Corson,
 
 612 So.2d 359, 366 (Miss.1992) (citing
 
 Tricon Metals & Servs., Inc. v. Topp,
 
 516 So.2d 236, 239 (Miss.1987)). However, the chancellor specifically stated in the record that this case did not involve complex issues. It was a routine contempt action for the nonpayment of child support.
 

 ¶ 24. The chancellor found that Kendall was in contempt and entered a judgment based on the facts and law applicable to this case. We find that the chancellor did not abuse his discretion by failing to make specific findings. Accordingly, this issue is without merit.
 

 i. Whether the chancellor committed plain error in his calculation of the amount of Rhonda’s award.
 

 ¶25. Although Kendall failed to file a cross-appeal attacking the judgment of the chancellor, we feel that is it necessary that we address as plain error the chancellor’s incorrect calculation of the amount of Rhonda’s award.
 
 See
 
 M.R.A.P. 28(a)(3) (stating that “the court may, at its option, notice a plain error not identified or distinctly specified” in a party’s statement of issues).
 

 a. Medical Insurance Premiums
 

 ¶ 26. Both Rhonda and Kendall testified that Kendall failed to provide court-ordered health insurance for their sons from January 2004 through August 2004. During that time, Rhonda paid the premiums for their health insurance through her employer. Rhonda placed in evidence a chart listing the amounts of the premiums and the total owed by Kendall. The amount owed totaled $1,554. Despite this summary introduced into evidence and Rhonda’s explicit testimony at trial that she was owed $1,554 for insurance premiums, the chancellor erroneously calculated the amount owed as $1,990. This amount is not based on substantial evidence because all of the relevant evidence shows that the correct amount is $1,554.
 

 ¶ 27. Further, the chancellor’s order incorrectly doubles the amount owed for the insurance premiums in his award. Again, Rhonda entered into evidence a summary of what she was owed for medical payments. The total comes to $7,485.86. This summary clearly indicates that the total
 
 includes
 
 the $1,554 she was owed for insurance premiums. Regardless, the chancellor awarded her the entire $7,485.86 — which already included the
 
 $1,554
 
 — plus the additional erroneous amount of $1,990. Accordingly, the entire $1,990 should be subtracted from Rhonda’s award because her reimbursement for the insurance premiums that she paid was already included in the $7,485.86 awarded for medical expenses. The award of $1,990 for medical insurance premiums is reversed and rendered.
 

 b. Past-due Child Support
 

 ¶ 28. We find further plain error in the chancellor’s decision to require Kendall to pay Rhonda $1,230 in past-due child support. This child support was withheld during the time that Kyle was residing with Kendall.
 

 ¶ 29. The supreme court has held:
 

 a father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother.
 
 Alexander v. Alexander,
 
 supra, 494 So.2d 365 (Miss.1986). This principle applies, however, only where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the
 
 *26
 
 support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing, and other necessities for the child.
 
 Nichols v. Tedder,
 
 547 So.2d 766, 769 (Miss.1989).
 

 Crow v. Crow,
 
 622 So.2d 1226, 1231 (Miss. 1993).
 

 ¶ 30. In
 
 Alexander,
 
 the supreme court held that affirming an award of past-due child support would unjustly enrich the mother when, during the entire period for which the support was claimed, the child was in the custody of and supported by the father.
 
 Alexander,
 
 494 So.2d at 368. Similarly, Kyle was in Kendall’s custody for the entire period for which the past-due child support was awarded. Kendall is entitled to receive a credit for the amount of necessary support that he provided to Kyle while Kyle was in his custody.
 

 ¶ 31. We recognize that Rhonda did not always agree that Kyle should be in Kendall’s custody. The record shows that she initially agreed to allow Kyle to move in with Kendall. She then filed a writ of habeas corpus to have Kyle returned. Kyle was returned to Rhonda; however, Kyle returned to Kendall’s home against Rhonda’s will. Kendall notified the chancellor that he was unable to force Kyle to stay with his mother as the chancellor required. Thus, Kendall did not keep Kyle in his custody against Rhonda’s wishes, and he should not be denied this credit for support because Kyle refused to stay with his mother.
 

 ¶ 32. Accordingly, the chancellor’s award of $1,230 in past-due child support is reversed, and this issue is remanded for the chancellor to determine the amount of credit Kendall should receive for the support he directly paid to Kyle.
 

 CONCLUSION
 

 ¶ 33. Rhonda is entitled to an award of $7,485.86 (consisting of medical expenses and the premiums she paid for medical insurance). That amount is set off by the $4,400 credit for the jeep for a total award of $3,085.86. On remand, the chancellor shall determine what portion of the $1,230 in past-due child support, if any, Rhonda is owed once Kendall is given credit for his direct support of Kyle while he lived with Kendall.
 

 ¶ 34. THE JUDGMENT OF THE CHANCERY COURT OF GREENE COUNTY IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . The chancellor’s written order erroneously states the amount as $10,705.80.