991 So.2d 1241 (2008)
Bradley J. SUDDUTH, Appellant
v.
Melissa MOWDY, Appellee.
No. 2007-CA-00575-COA.
Court of Appeals of Mississippi.
September 30, 2008.
*1242 Thomas Goodwin Bittick, attorney for appellant.
James C. Mayo, Louisville, attorney for appellee.
BEFORE KING, C.J., BARNES and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. The Chancery Court of Lauderdale County denied Bradley Sudduth's (Brad) request for a modification of custody and his motion for a new trial. Brad appeals, raising two issues:
I. Whether the chancellor's finding that Hannah was not adversely affected while in her mother's care was manifestly wrong and clearly erroneous; and
II. Whether the chancellor abused his discretion by denying Brad's motion for a new trial.
Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Brad and Melissa Mowdy (Melissa) were married in March 1999. From this union, one child, Hannah, was born on October 2, 1999. Brad and Melissa divorced in September 2000. The chancellor ordered Brad and Melissa to share joint legal custody, with Melissa having physical custody of Hannah. Brad was allowed liberal visitation and ordered to pay child support.
¶ 3. After the divorce, Brad and Melissa both remained in Meridian, Mississippi, residing in the same mobile home park. The proximity allowed Brad to keep Hannah almost every weekend and on his days off from work. However, in February 2003, Melissa moved to Oxford, Mississippi to escape an abusive relationship. Despite the distance, Brad continued to exercise his weekend visitation with Hannah.
¶ 4. In December 2003, Brad and Melissa agreed that Hannah would live with Brad. The parties gave conflicting accounts of the reasons for this arrangement. Brad and Melissa filed a joint motion to modify child support, and the chancery court entered an agreed order that terminated Brad's child support obligation since Hannah would be living with him. However, the order stated that Melissa would still maintain physical custody of Hannah. Hannah moved in with Brad and Kathleen, Brad's second wife, and lived with them for twenty months. During this time, Melissa exercised visitation with Hannah, and *1243 the arrangement continued without incident until July 2005.
¶ 5. In July 2005, Melissa asked Brad to return Hannah to her, and Brad refused to do so. Thereafter, Brad filed a motion to modify custody, and Melissa filed a petition for writ of habeas corpus. On August 12, 2005, the chancery court entered a judgment, finding that Brad failed to prove Melissa abandoned Hannah or was otherwise unfit to maintain custody of Hannah and ordered Brad to return Hannah to Melissa.
¶ 6. After Brad returned Hannah to Melissa, Melissa no longer allowed Brad to exercise visitation with Hannah, which began an onslaught of motions for contempt and modification filed by both parties. In hopes of remedying the problem, the chancery court entered an agreed temporary judgment on November 18, 2005, that reestablished Brad's right to visitation. Despite this effort, problems persisted with Brad's visitation. The chancery court consolidated the various motions filed by Brad and Melissa into one action, and a trial was held on September 13, 14, and 15, 2006, and on December 11, 2006.
¶ 7. During the trial, Brad attempted to prove that there had been a material change in circumstances, which had an adverse effect on Hannah. Brad alleged that: (1) Melissa allowed Hannah's teeth to decay; (2) Melissa gave Hannah a powerful anti-psychotic drug; (3) Hannah witnessed Melissa in many inappropriate relationships; and (4) Melissa did not allow Brad to exercise visitation, causing Hannah great stress. The alleged incidents are discussed below in greater detail. On February 2, 2007, the chancellor denied Brad's request for a modification of custody. This judgment was supported by a very detailed opinion in which the chancellor found that there had been a material change in circumstances since the prior order of the court but that the changes were not adverse to Hannah's welfare. Brad then filed a motion to set aside the judgment and a motion for a new trial based on newly discovered evidence, which was Hannah's first-grade report card. The chancery court denied Brad's motions, and he timely filed this appeal.

ANALYSIS

I. Whether the chancellor's finding that Hannah was not adversely affected while in her mother's care was manifestly wrong and clearly erroneous.
¶ 8. Brad contends that the chancellor correctly determined that a material change in circumstances occurred, but the chancellor's decision that the material change in circumstances did not have an adverse effect on Hannah was clearly erroneous and manifestly wrong. This Court will not disturb a chancellor's findings of fact when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. See Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). A change in custody should not be granted unless there has been a material change in circumstances since the entry of the original custody order. See Lackey v. Fuller, 755 So.2d 1083, 1086(¶ 13) (Miss.2000). "In order for child custody to be modified, a non-custodial party must prove (1) there has been a substantial change in the circumstances affecting the child; (2) the change adversely affects the [child's] welfare; and (3) a change in custody is in the best interest of the child." Johnson v. Gray, 859 So.2d 1006, 1013(¶ 33) (Miss. 2003). The best interest of the child is always the court's foremost consideration. Shepherd v. Shepherd, 769 So.2d 242, 245(¶ 11) (Miss.Ct.App.2000) (citing Riley *1244 v. Doerner, 677 So.2d 740, 744 (Miss. 1996)).
¶ 9. The chancellor's denial of Brad's request for a modification of custody was accompanied by a detailed opinion in which the chancellor summarized testimony concerning Hannah's tooth decay, Melissa's relationship history, allegations that Melissa gave Hannah a powerful anti-psychotic drug, and allegations that Melissa caused Hannah stress by refusing to let Brad exercise his visitation rights. The chancellor found that there was a material change in circumstances without identifying what exactly constituted the material change. However, the chancellor found that neither of these instances caused Hannah to suffer an adverse effect.
¶ 10. First, Brad complained that Melissa neglected to address Hannah's dental problems. Melissa testified that she first noticed Hannah's dental problems when Hannah was one year old. By the time Hannah was four years old, her front teeth were rotten, and she had numerous cavities. Brad contends that Hannah's teeth went untreated because Melissa allowed Hannah's Medicaid coverage to lapse. However, the chancellor noted that the original custody order required Brad to maintain healthcare insurance for Hannah. Melissa eventually had Hannah's Medicaid coverage reinstated, and Hannah's teeth were treated in July 2003.
¶ 11. Second, Brad complained that Hannah witnessed her mother in numerous inappropriate relationships. From 2000 to 2006, Melissa dated six men. These included her stepbrother and one individual who was abusive. Melissa testified that Hannah was present during some disputes in her abusive relationship. Melissa moved to Oxford to escape that relationship. Brad also expressed concern about the various men spending the night with Melissa while Hannah was present and the bad impression this would leave on Hannah. Melissa testified that Hannah was present on a few occasions when she spent the night with a boyfriend, but she denied having sexual relations with any of the men in Hannah's presence.
¶ 12. Third, Brad complained that Melissa gave Hannah a powerful anti-psychotic drug, which was not FDA-approved for children. The chancellor noted that Melissa took Hannah to a pediatrician who gave Hannah a prescription for Risperdal. Risperdal is used for treatment of irritability associated with autistic disorder in children ages five to seventeen and for treatment of schizophrenia and bipolar disorder in adults. Melissa testified that Hannah took one-half of a pill of Risperdal only one time, after which Brad and Melissa agreed that Hannah would no longer take the medication.
¶ 13. Fourth, Brad complained that Melissa refused to let him exercise his visitation rights, causing Hannah great stress. Brad and Melissa testified that Hannah was very emotional during this time, and she would act out in her frustration.
¶ 14. After reviewing the record, we find that there is substantial evidence supporting the chancellor's decision to deny Brad's request for a modification of custody because Brad did not prove that Hannah was adversely affected by these occurrences. First, both Brad and Melissa are responsible for Hannah's healthcare needs. In fact, the original custody order required Brad to maintain healthcare insurance for Hannah. Therefore, it cannot be said that Hannah's dental problems were entirely Melissa's fault. Second, although Brad provides the Court with substantial material regarding the effects Risperdal can have on young children, the record is void of any evidence that Hannah suffered any detriment by taking one-half of a pill of *1245 Risperdal on one occasion. In regard to Melissa's relationship history, it is well established that "the relationships or indiscretions of the mother are never enough by themselves to constitute a material change of circumstances." Forsythe v. Akers, 768 So.2d 943, 947(¶ 11) (Miss.Ct.App. 2000) (citing Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983)). Finally, while it is unfortunate that Melissa denied Brad's visitation with Hannah, the chancellor found that a change of custody was not warranted; instead, the chancellor held Melissa in civil contempt of court for her failure to comply with the visitation order. Thus, finding no error, we affirm the chancellor's denial of Brad's request for modification of custody.

II. Whether the chancellor abused his discretion by denying Brad's motion for a new trial.
¶ 15. Next, Brad argues that the chancellor abused his discretion by denying his motion for a new trial based on newly discovered evidence  Hannah's report card from August to December 2006, which indicated that Hannah was failing the first grade. Mississippi Rule of Civil Procedure 60(b)(3) provides relief from a final judgement or an order if the movant can show that there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial...." Askew v. Askew, 699 So.2d 515, 516(¶ 4) (Miss.1997). "[R]elief under Rule 60(b) [is] generally addressed to the sound discretion of the trial court and appellate review is limited to whether the discretion has been abused." Id. at 519(¶ 17) (citing Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984)).
¶ 16. Brad contends that Hannah's report card is evidence that she was adversely affected while in Melissa's care. Brad maintains that Melissa precluded him from accessing Hannah's school records, and he could not obtain a copy of Hannah's report card until after the conclusion of the trial. The chancellor denied Brad's motion for a new trial, stating: (1) the pretrial order established the issues before the court, the pleadings before the court, and which dates should be considered by the court in resolving those issues; and (2) the chancellor did not agree that December 11, 2006, was the last date that the court had to consider in this action.
¶ 17. Upon a review of the record, we find that the chancellor did not abuse his discretion by denying Brad's motion for a new trial. The record indicates that, during the trial, Brad presented evidence of Hannah's poor school performance in kindergarten. Brad and Kathleen testified that they had conferences with Hannah's kindergarten teacher and emailed her to stay apprised of Hannah's progress. Kathleen testified that she reviewed Hannah's class work and determined that Hannah was not doing well in school. Brad also testified that Melissa restricted his communications with Hannah's first-grade teacher. Brad testified that he called the school to obtain information regarding Hannah's grades, and the principal informed him that he and Melissa would have to schedule an appointment together so that he could have a conference with Hannah's teacher. Brad also stated that he did not believe that Melissa would cooperate.
¶ 18. It may not have been as easy for Brad to obtain information regarding Hannah's progress in school, but it was not impossible. Hannah's final first-grade report card for the semester was not available until after the date of trial, but there is no evidence in the record to indicate that Brad could not have obtained Hannah's school records sooner. Because Brad failed to exercise due diligence in *1246 obtaining Hannah's school records, we find that the chancellor did not abuse his discretion by denying Brad's motion for a new trial.

CONCLUSION
¶ 19. We find that there is substantial evidence in the record supporting the chancellor's denial of Brad's request for a modification of custody because Brad failed to prove that Hannah was adversely affected while in Melissa's care. We also find that the chancellor did not err in denying Brad's motion for a new trial because Brad failed to exercise due diligence in obtaining evidence of Hannah's progress in the first grade. Thus, we affirm the judgment of the chancery court.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.