## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00629-COA

**KENNETH MORELAND**                                              **APPELLANT**

**v.**

**BRANDI MORELAND GREENWOOD SPEARS**                             **APPELLEE**

DATE OF JUDGMENT:            03/28/2014
TRIAL JUDGE:                 HON. GEORGE WARD
COURT FROM WHICH APPEALED:   ADAMS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     MICHAEL JAMES MALOUF JR.
                             MELISSA ANN MALOUF
                             ROBERT EUGENE JONES II
ATTORNEY FOR APPELLEE:       JOSEPH BILBO MOFFETT
NATURE OF THE CASE:          CIVIL - CUSTODY
TRIAL COURT DISPOSITION:     MODIFIED CHILD-CUSTODY
                             AGREEMENT
DISPOSITION:                 REVERSED AND RENDERED: 03/01/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Kenneth Moreland (Ken) and Brandy Moreland Greenwood Spears (Brandy) divorced

on August 23, 2012, on the ground of irreconcilable differences. There was one child born

to the marriage, Lauren. As part of their divorce decree, Brandy and Ken agreed to share

joint legal custody, make Brandy the custodial parent, award Ken liberal visitation, and

alternate the years Ken and Brandy could claim Lauren as a dependent on taxes. The

agreement also required Ken to pay $400 in monthly child support, one-half of school

expenses, and one-half of any activity expenses up to two activities.

¶2. On August 9, 2013, Brandy filed a petition in Adams County Chancery Court for a modification of the child-custody agreement and to hold Ken in contempt for failing to pay his half of Lauren's tuition and activity expenses. Brandy sought full legal custody, a change to the visitation schedule, a mental evaluation of Ken, and reimbursement for all owed expenses and expenses incurred in bringing the petition for modification.

¶3. The chancellor held a hearing on the merits of the petition on March 18, 2014. Only Brandy and Ken testified at the hearing. The chancellor issued an order on March 28, 2014. He granted Brandy sole legal custody, modified Ken's visitation, and ordered that only Brandy could claim Lauren as a dependent. It is from this judgment that Ken appeals.

STANDARD OF REVIEW

¶4. The Mississippi Supreme Court has stated that the standard of review in child-custody cases "is quite limited. A chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this Court to reverse." *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1012 (¶23) (Miss. 2012) (quoting *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003)). Further, "[f]indings of fact made by a chancellor may not be set aside or disturbed upon appeal if they are supported by substantial, credible evidence." *Id.* at 1013 (¶23) (quoting *Marascalco v. Marascalco*, 445 So. 2d 1380, 1382 (Miss. 1984)).

ANALYSIS

I. *Whether the chancellor erred in awarding Brandy full legal custody.*

¶5. Ken initially challenges the decision of the chancellor to grant Brandy full legal custody of Lauren. For a change in custody, the party seeking a modification must show by

a preponderance of the evidence "(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." *Mabus*, 847 So. 2d at 818 (¶8) (citations omitted).

¶6. First, Ken asserts the chancellor erred in finding that Brandy proved a material change in circumstances. "In considering whether there has been such a change in circumstances, the totality of the circumstances should be considered." *Id.* (citing *Spain v. Holland*, 483 So. 2d 318, 320 (Miss. 1986)). At the hearing, Brandy testified that Ken's behavior had deteriorated since the divorce, he failed to earn enough money as a farmer to provide for Lauren, and he could not adequately care for Lauren.

¶7. Brandy testified that Ken frequently brought Lauren to preschool late and had caused a disruption at Lauren's school during a tour of the facilities. Another event occurred when Ken brought Lauren to a dance event late, rushed her onto the field during the performance, and knocked Lauren down. Brandy also alluded to Ken's mental state, as he underwent a psychological evaluation and exhibited obsessive-compulsive tendencies. Brandy further testified that Ken harassed Lauren's doctors for information. However, Brandy stated that her communication with Ken suffered, and she admittedly ignored some of Ken's emails with questions about Lauren's care.

¶8. Ken testified that while he did take Lauren to school late, Brandy also took Lauren to school late. Further, Lauren's teacher said the tardiness was not a problem, and Ken testified he would improve in the future. Additionally, Ken's mental evaluation revealed mild anxiety

but not a diagnosis of obsessive-compulsive disorder or any other disorder. Also, Ken denied that his farming income constituted a material change. Ken began farming in 2008, prior to Brandy and Ken's divorce agreement. Ken further asserts that Brandy's primary motivation for seeking a modification was to compel Ken to pay for private school and extracurricular activities.

¶9. The chancellor found that Ken's failure to pay half of Lauren's tuition and activity fees constituted a material change in circumstances. The chancellor, however, did not find Ken's failure to pay resulted in contempt. Ken contends the divorce decree did not require him to pay these expenses if Brandy unilaterally decided on the school and activities. The decree stated:

> Kenneth Moreland shall pay one-half (½) of all expenses of the minor child for up to two (2) extracurricular activities and the reasonable age appropriate expenses of the minor child[,] *which the parties agree are reasonable and necessary* for the minor child.
>
> . . . .
>
> The parties shall be responsible for one-half (½) of all preschool and/or private school tuition and expenses for the minor child attending preschool and/or private school, until graduation, including but not limited to registration fees, school uniforms, school supplies, lunches[,] and any other expenses due to the school or as a result of the minor child attending school *if the parties agree to enroll Lauren in a private preschool or school*.

(Emphasis added).

¶10. Ken and Brandy mutually agreed to the terms of the divorce decree. Therefore, this Court must determine whether the decree, as a contract, compelled Ken to pay these expenses. "While a chancellor's decisions in a domestic action are reviewed for manifest

4

error, a property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo." *Gaiennie v. McMillin*, 138 So. 3d 131, 135 (¶8) (Miss. 2014) (citation omitted). "This Court applies a three-tiered approach to contract interpretation. First, we apply the four corners test, wherein this Court looks to the language that the parties used in expressing their agreement." *Id.* (internal quotations and citations omitted).

¶11. Looking to the terms of the decree, the provisions clearly compel Ken to pay for Lauren's private-school tuition and expenses *only if* the parties agree to enroll Lauren in a private school. Ken testified that he did not agree to Lauren's attendance at a private preschool or the activities Brandy enrolled her in. Though Ken attended Lauren's events, he did not discuss or agree with Brandy's choices of school or activities. Therefore, Ken did not have to pay for these expenses, and the chancellor erred in finding his actions constituted a material change in circumstances.

¶12. Despite whether these instances constituted a material change in circumstances, it was incumbent upon Brandy to show these changes had an adverse effect on Lauren. Brandy's only contention of an adverse effect was that some of Ken's actions embarrassed Lauren and, as Lauren grew older, Brandy speculated that the extent of embarrassment would increase. Brandy, however, fails to show how embarrassment equates to an adverse effect. Lauren continued to performed well in school and received satisfactory marks in her progress reports. As such, we find that Brandy failed to prove any adverse effects on Lauren.

¶13. This Court has held far more egregious conduct did not warrant a change in custody

5

when no adverse effect occurred. In *Sudduth v. Mowdy*, 991 So. 2d 1241, 1245 (¶14) (Miss. Ct. App. 2008), this Court found the minor child's dental problems, the mother's inappropriate relationships, and the allegations that the mother gave the child anti-psychotic drugs did not warrant a modification of custody from the mother to the father when the father failed to prove any adverse effects on the child.

¶14. Likewise, in *Wikel v. Miller*, 53 So. 3d 29, 35-36 (¶¶15, 17) (Miss. Ct. App. 2010), this Court affirmed the chancellor's findings that the mother's interference with the father's visitation, the minor children's behavioral problems requiring counseling, and the mother's prior relationships did not warrant a modification in custody when the minor children excelled in school and showed no adverse effects. For these reasons, Brandy failed to demonstrate that Lauren suffered from adverse effects warranting a modification.

¶15. The third consideration for modification is the best interests of the child. The chancellor found a material change in circumstances that adversely affected Lauren required a modification of Ken's legal custody. The chancellor stated this change in custody was in the best interests of Lauren. But the chancellor failed to make any findings under the *Albright*[1] factors to show how the modification was in Lauren's best interests.

¶16. This Court finds that Brandy failed to meet her burden of proving a material change in circumstances that adversely affected Lauren. The chancellor's decision was manifestly wrong, as he found that all factors weighed in favor of granting sole legal custody to Brandy. Therefore, this Court reverses the chancellor's decision and renders that Ken's legal custody

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983), sets forth the factors chancellors must use in determining child custody.

is restored.

II.     *Whether the chancellor erred in modifying visitation.*

¶17.    Ken also contends the chancellor erred when he modified the visitation agreement. "To modify a visitation order, 'it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child.'" *H.L.S. v. R.S.R.*, 949 So. 2d 794, 798 (¶9) (Miss. Ct. App. 2006) (quoting *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶25) (Miss. Ct. App. 2003)). "The chancellor has broad discretion to determine the specific times for visitation." *Id.* (citing *Haddon v. Haddon*, 806 So. 2d 1017, 1020 (¶12) (Miss. 2000)).

¶18.    Ken argues that Brandy failed to show that the prior visitation schedule did not work. Ken also contends that the visitation schedule in the divorce decree was in place less than a year before Brandy attempted to modify, so the visitation schedule was not in place long enough to work. In contrast, Brandy argues that Lauren's tardiness when Ken took her to school demonstrated that the visitation schedule needed to change.

¶19.    In *Jones v. McQuage*, 932 So. 2d 846, 849 (¶¶14-15) (Miss. Ct. App. 2006), this Court reversed a chancellor's modification of visitation based on the child's tardiness. This Court found the tardiness could be attributed to the custodial parent and that the visitation schedule that was in place for only a four-month period was not long enough to prove whether it worked or not. *Id.* Further, in another case, this Court reversed a visitation modification when the mother failed to demonstrate that the visitation schedule did not work or that the child experienced adverse effects. *Witters v. Witters*, 864 So. 2d 999, 1003 (¶16) (Miss. Ct.

7

App. 2004); *see also Riley v. Riley*, 884 So. 2d 791, 794-95 (¶17) (Miss. Ct. App. 2004) (denied modification where no evidence that transportation provisions in schedule did not work). Therefore, Brandy needed to show the visitation schedule did not work before the chancellor could have granted a modification.

¶20. Based on Brandy's assertion, the chancellor modified visitation so that Ken did not take Lauren to school. This was in error. The chancellor found Lauren's tardiness when she stayed with Ken and Ken's disruption of Lauren's class illustrated that the visitation schedule needed a modification in Lauren's best interests. However, several of Lauren's tardies were attributable to Brandy, and there was no additional evidence to indicate that the schedule did not work aside from Lauren's tardiness. The chancellor's finding that the visitation schedule did not work and his failure to make a finding of the best interests of the child were manifestly wrong. Therefore, this Court reverses the chancellor's modification and reinstates the original visitation schedule.

> III. *Whether the chancellor erred in preventing Ken from claiming Lauren as a dependent for tax purposes.*

¶21. Ken's final issue on appeal is that the chancellor erred when he gave Brandy the ability to claim Lauren as a dependent for taxes every year. Previously, Brandy and Ken alternated the years they could claim Lauren. The chancellor, however, stripped Ken of this right based on his failure to pay for Lauren's private-school tuition and her extracurricular activities.

¶22. In their property-settlement agreement, the parties agreed:

> For future years beginning 2012, Father shall claim Lauren as an income tax

8

dependent in even numbered years and Mother shall claim Lauren as an income tax dependent in odd numbered years for State and Federal income tax purposes.

Also, in the judgment, the chancellor ruled:

[I]n as much as Mr. Moreland is paying no portion of the child's private school education and other related expenses and one-half of the costs of the child's extracurricular activities, and since Ms. Moreland is the custodial parent, Mr. Moreland shall not be allowed to claim the child as a dependent for income tax purposes.

¶23. Based on our ruling above, the grounds for the chancellor's decision to amend the property-settlement agreement as to the income-tax deduction is without a sufficient basis. Further, there is simply not sufficient evidence to support the modification of the property-settlement agreement and change the parties' agreed-upon decision as to the tax deduction.

¶24. As a result, this Court reverses and renders a judgment that restores the terms of the original property-settlement agreement that allows Ken to claim an income-tax deduction for Lauren in alternating years.

¶25. **THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., BARNES, ISHEE, FAIR, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., NOT PARTICIPATING.**