# IN THE COURT OF APPEALS

## OF THE

## STATE OF MISSISSIPPI

### NO. 1999-CP-00848-COA

#### CONSOLIDATED WITH

#### NO. 1999-CP-01259-COA &

#### NO. 1999-CP-01384-COA

HOWARD CLAYBORNE MCDONALD, JR.                                                  APPELLANT

v.

ROSEMARY SHEFFIELD MCDONALD                                                        APPELLEE

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 03/17/1999 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID R. SPARKS |
| | HOWARD C. MCDONALD JR (IN PROPRIA PERSONA) |
| ATTORNEY FOR APPELLEE: | C. JACKSON WILLIAMS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | MODIFICATION OF ORIGINAL DIVORCE DECREE; APPELLANT FOUND IN CONTEMPT FOR WILFUL VIOLATION OF VISITATION RIGHTS; TEMPORARY ORDER TRANSFERRING CUSTODY OF TWO CHILDREN TO THE APPELLEE |
| DISPOSITION: | AFFIRMED - 10/01/2002 |
| MOTION FOR REHEARING FILED: | 10/11/2002 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE SOUTHWICK, P.J., LEE, AND MYERS, JJ.

SOUTHWICK, P.J., FOR THE COURT:

¶1. This is a suit for modification of earlier domestic relation orders. Three separate appeals have been consolidated. The former husband alleges that the appointed chancellor lacked jurisdiction to hear the case, that an agreed order that neither he nor his attorney had signed should not have been entered, that $1106 in court costs should not have been assessed, that he should not have been found in contempt of court, and

that he was denied due process at the time of a custody proceeding. We find no error and affirm as to all issues.

## FACTS

¶2. In April 1998, the Lee County Chancery Court entered a decree ending the marriage of Howard Clayborne McDonald and Rosemary McDonald. The chancellor granted the divorce to Mr. McDonald on the basis of his wife's adultery and cruel and inhuman treatment. The factual basis for adultery was that Mrs. McDonald was involved in a sexual relationship with another woman. Mr. McDonald was granted physical custody of the two youngest children, while Mrs. McDonald was granted physical custody of the oldest child, who exercised a preference to reside with her. Each party was granted reasonable visitation. The decree prohibited visitation in the presence of anyone with which Mrs. McDonald was having a lesbian relationship.

¶3. Later in the same year, Mrs. McDonald filed for modification. She alleged that her former husband was violating the decree's provisions regarding visitation. She requested that the court designate a schedule and remove the provision prohibiting visitation in the presence of her lesbian partner. Due to the recusal of all three chancellors in Lee County, the Supreme Court appointed former chancellor William L. Griffin, Jr. to preside. Special Chancellor Griffin established a schedule giving Mrs. McDonald visitation on every second and fourth weekend. Chancellor Griffin stated that because the entry of a final order ends the appointment of a special judge, his order would initially be temporary, to turn permanent in six months provided no problems arose.

¶4. At the conclusion of this hearing Chancellor Griffin asked both parties whether they accepted the proposed visitation schedule. Mrs. McDonald was in agreement with the schedule. When Mr. McDonald was asked whether he accepted it, he responded that "[u]nder the terms that my attorney and you have explained it to me, I have no choice but to agree, Your Honor." The chancellor stated that within ten days this order was to be signed by all parties and he would enter it.

¶5. Mr. McDonald later refused to sign the order. Consequently Mrs. McDonald filed a "Motion for Entry of Agreed Order." A hearing was held on April 6, 1999. Mrs. McDonald also requested attorney fees incurred by her during the hearing. During this hearing, Mr. McDonald's attorney filed a motion to withdraw. The motions for fees and for counsel to withdraw were granted. Mr. McDonald requested a continuance to obtain new counsel, but the chancellor refused. On April 14, the chancellor entered the order modifying the divorce decree without gaining the signature of Mr. McDonald or his counsel. One of the present appeals is from that order.

¶6. On June 25, 1999, another hearing took place. Mrs. McDonald, her counsel, and Mr. McDonald who appeared without counsel, were present. The same special chancellor presided. Various motions were heard. Included were two motions for contempt filed against Mr. McDonald for interference with his former wife's visitation. After testimony from several witnesses, the chancellor found Mr. McDonald to be in direct contempt of court. Mrs. McDonald was awarded $1,500 in attorney fees. The court ordered that Mrs. McDonald have extended visitation until August 3, 1999, at which time a hearing was to be conducted to determine visitation, child support and the future custody of the children. The chancellor found that Mr. McDonald would do everything in his power to thwart the court's visitation order; consequently, the chancellor ordered the bailiff and Mr. McDonald's mother to retrieve the children from day care to ensure that the court could monitor the exchange of the children. The Lee County Department of Human Services

was ordered to perform a home study of both parents' home, with the purpose of establishing the "responsibility and suitability of any other adults living in either home." These rulings were reduced to an order dated July 14, 1999, and Mr. McDonald has appealed here from that order.

¶7. A week later, Mr. McDonald filed a complaint in United States District Court, naming Special Chancellor Griffin among others as defendants and claiming that they had violated his civil rights. The federal suit was dismissed in October 1999 as being frivolous. *McDonald v. Griffin*, 1:99CV226-D-D (N.D. Miss. Oct. 4, 1999), *aff'd*, 228 F.3d 409 (5th Cir. 2000) (table), *cert. den*. 531 U.S. 1150 (2001).

¶8. After a hearing on August 3, 1999, the chancellor entered an order for temporary custody of the two minor children with their mother, ordered child support by Mr. McDonald, and set a visitation schedule. Mr. McDonald appealed from the August 11 order setting out those rulings.

¶9. All appeals have been consolidated and deflected to this Court.

## DISCUSSION

### I. Jurisdiction of Special Chancellor Griffin

¶10. Mr. McDonald asserts that Special Chancellor Griffin lacked authority. First, it is argued that Mississippi Constitution Section 165 gives the Governor sole authority to appoint a special judge after a recusal. Chancellor Griffin was appointed by then-Supreme Court Chief Justice Lenore Prather. By statute, which Mr. McDonald asserts is unconstitutional, the Chief Justice may appoint a special judge if the judges for that jurisdiction are "unwilling or unable to hear a case . . . ." Miss. Code Ann. § 9-1-105 (Supp. 2001).

¶11. When a statute's constitutionality is challenged, a party must give notice to the Attorney General. M.R.C.P. 24(d). It is reversible error for a court to declare a statute unconstitutional without the Rule 24 notice. *State v. Watkins*, 676 So. 2d 247, 250 (Miss. 1996).[1] No such notice was given. We reject Mr. McDonald's argument that since the Attorney General represented Special Chancellor Griffin in the federal litigation, that this is sufficient notice. Explicit notice to the Attorney General of the existence of this litigation and the challenge to the statute's constitutionality is required.

¶12. The constitutional issue arises from this provision:

> Whenever any judge of the Supreme Court or the judge or chancellor of any district in this state shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the governor may commission another, or others, of law knowledge, to preside at such term or during such disability of disqualification in the place of the judge or judges so disqualified.

Miss. Const. art. 6, § 165 (1890).

¶13. This provision does not state that it is the exclusive mechanism for selection of special judges. The provision itself first sets out another alternative, namely, that the parties agree on a member of the bar as a replacement. The Governor's authority is prefaced with the word "may," indicating that the executive has personal discretion or perhaps that the use of this procedure is optional as opposed to using some other feasible but unstated procedure. The statute allowing an appointment by the Chief Justice also provides that if the Governor makes an appointment under his authority, the Chief Justice's appointment becomes void.

Miss. Code Ann. § 9-1-105 (4) (Supp. 2001). Thus the statute offers an explicitly subordinate alternative to the Governor's constitutional power of appointment. We note these uncertainties about whether section 165 declares an exclusive procedure in light of the presumption of the constitutional validity of a statute. *Board of Trustees of State Institutions of Higher Learning v. Ray*, 809 So. 2d 627, 636 (Miss. 2002).

¶14. If the statute is constitutional, then the special chancellor could properly be appointed in this manner. Yet even were we to find that there were flaws in the procedure, the appointment was pursuant to law and made Griffin at least a *de facto* judge, whose orders are valid until the issue of authority is properly raised and determined:

> *Crocker* defined a de facto officer as "'one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto.'" [*Crocker v. Sears, Roebuck & Co.*, 346 So.2d 921, 922 (Miss.1977)](quoting *Adams v. Mississippi State Bank*, 75 Miss. 701, 725, 23 So. 395, 398 (1897) . . . ). We noted that, "[i]t is well settled in this state that acts of a de facto judge are valid, regardless of whether he was properly appointed or qualified or not . . . ." *Crocker*, 346 So.2d at 922-23 (quoting *Bird v. State*, 154 Miss. 493, 500, 122 So. 539, 540 (1929)).

*Barton v. Barton*, 726 So. 2d 163, 166 (Miss. 1998). Chancellor Griffin was validly presiding over this case under the color of his appointment by the Chief Justice.

¶15. Because the issue was not properly presented by giving notice to the Attorney General, and because we find that in all events the appointment made the special chancellor at least a *de facto* officer, we find no basis to doubt the authority that may be given in this manner.

¶16. It is also alleged that Griffin did not take the required oath. However, there is a filed stamped oath of office signed by Chancellor Griffin in the record.

¶17. The special chancellor had authority to act in this case.

## II. Notice of Motion; Entry of Agreed Order Without a Party's Signature

¶18. Mr. McDonald asserts that the April 14, 1999 order was no longer an agreed order by the time it was entered because he refused to sign it. He further asserts that he was entitled to five days' notice of his own attorney's motion to withdraw; not having received it, he needed a continuance.

¶19. By court rule, a party is entitled to five days' notice before a hearing on a motion. M.R.C.P. 6 (d). It makes sense to apply this rule to require an attorney to give his own client notice of a motion to withdraw. Yet we find that the certificate of service on the motion is dated March 25, 1999, indicates mailed notice to Mr. McDonald, and the hearing did not occur until April 6. When mailed notice is used, three days is to be added to the necessary period for notice. M.R.C.P. 6 (e). This motion complied with the notice requirements.

¶20. As to the continuance to find another attorney, the grant or denial is within the discretion of the trial court. A denial for a continuance should only be overturned when "manifest injustice" has occurred. *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993). The special chancellor determined that since Mr. McDonald had about two weeks' notice of his counsel's request to withdraw, that he should have obtained another attorney within that period of time if he needed one. The court also stated that the hearing

was for the "ministerial act of entry of what this Court finds to be an order to which both of the parties, in open court, on the record, on March the 17th, 1999, agreed." We find this to be a fair characterization of the facts that are relevant for whether denying a continuance was an abuse of discretion. We find no such abuse.

¶21. Mr. McDonald also argues that the order entered April 14, 1999, that modified the original divorce decree was invalid because he did not sign the order. We agree that there must be consent for a consent decree. Such consent did not exist at the time that the written order was ready for signature; it did exist at the earlier date that the terms of the order were finalized. At the conclusion of the initial hearing held on March 17, 1999, the following took place.

> Chancellor: Mr. McDonald, you've heard everything I've said, and do you understand everything that I've said.
>
> Mr. McDonald: Yes, Your Honor.
>
> Chancellor: Okay. Is this your agreement, and you agree to everything that we've come to?
>
> Mr. McDonald: Under the terms that my attorney and you have explained it to me, I have no choice but to agree, Your Honor.
>
> Chancellor: Well, whether or not you have a choice is between you and your lawyer, but are you satisfied with the services that Mr. Sparks has provided for you today.
>
> Mr. McDonald: Yes, sir.

¶22. What is apparent is that Mr. McDonald agreed, if unenthusiastically, to the modifications that had been determined at this hearing. The hearing ended with the act of reducing that understanding to writing still to occur. Since Mr. McDonald subsequently refused to sign such an order, on April 6, 1999, a hearing was held on Mrs. McDonald's motion for entry of the order. Mr. McDonald represented to the court that he had not realized some of the terms to which he was indicating agreement at the previous hearing, including the precise visitation frequency and dates.

¶23. The order entered on April 14, 1999, asserted that it represented the earlier agreement of the parties but was signed after Mr. McDonald withdrew his consent. The special chancellor entered the order because it was "consistent with the Court's comments and with the agreement announced by the parties in the hearing on March 17, 1999." We therefore interpret the order as based on the special chancellor's conclusion that Mr. McDonald, having intelligently agreed to the order at the earlier hearing, would remain bound.

¶24. The issue this raises is whether a party can through counsel first agree to a judgment and then, prior to the entry of the order reflecting that judgment, withdraw his consent. What caused the withdrawal of consent to become apparent here is that Mr. McDonald's signature on the order was sought. Had the special chancellor himself prepared the order and entered it without seeking the parties' signature, so long as it properly reflected the agreement stated in open court, Mr. McDonald would have been limited to making an argument under Rule 60(b) that mutual mistake, fraud, or some other adequate ground permitted the modification of the order. M.R.C.P. 60; *Dunn v. BL Development Corp*., 747 So. 2d 284, 285 (Miss. Ct. App. 1999). Should these sorts of limitations on challenging the order apply even prior to its formal

entry?

¶25. A consent judgment is in the nature of a contract. *Parker v. Parker*, 434 So. 2d 1361, 1362 (Miss. 1982); *Guthrie v. Guthrie*, 233 Miss. 550, 553, 102 So.2d 381, 383 (1958). Here, a settlement was announced in open court and all that remained was to reduce its orally stated terms to writing for judicial signature. We consider that question under traditional contract rules:

> Whether contracting parties are bound by an informal agreement prior to the execution of a contemplated formal writing is a matter of intention to be determined by the surrounding facts and circumstances of each particular case.

*WRH Properties, Inc. v. Estate of Johnson*, 759 So. 2d 394, 397 (Miss. 2000), quoting *Mid-Continent Tel. Corp. v. Home Tel. Co.*, 319 F.Supp. 1176, 1189 (N.D. Miss. 1970). We find that the circumstances of announcing in open court the settlement of the dispute that is the purpose for that hearing, with a recital of the terms of the settlement into the record, followed by an agreement to end the hearing, reflects an intention to be bound at that time.

¶26. Absent any showing that the final written order did not reflect the agreement announced in court, or any identification of a matter cognizable under Rule 60 that could lead to setting aside a consent decree after being entered -- and neither showing exists here -- we find that the parties were bound by their agreement even before it was reduced to a formal written order.

### III. The Cost of Appeal.

¶27. Mr. McDonald maintains that the wrong statute was used to determine the costs that he was to pay for the appeal. Appellee, perhaps unconcerned about the clerk's finances, does not address the issue. We thus examine the claim without the benefit of a response.

¶28. Mr. McDonald makes two specific claims. First is that the chancery clerk charged two dollars a page for the transcript and record, when the statute that the clerk referenced is actually for circuit clerks. The point has initial plausibility. The supplemental cost bill submitted by the clerk sought the following:

> Clerk's file 140 pages @ $2.00 per page $280.00

> Exhibits 370 pages @ $2.00 per page $740.00

¶29. The clerk informed McDonald that the "fees are calculated per Section 25-7-13(6) . . . ." What gives McDonald's claim plausibility is that section 25-7-13 is entitled "Fees for Circuit Clerks," while section 25-7-9 is the one entitled "Fees for Chancery Clerks." However, the specific section of the circuit clerk statute that the chancery clerk referenced stated this:

> (6) For making final records required by law, including, but not limited to, circuit and county court minutes, and furnishing transcripts of records, the circuit clerk shall charge Two Dollars ($2.00) per page. *The same fees shall be allowed to all officers for making and certifying copies of records or papers which they are authorized to copy and certify.*

Miss. Code Ann. § 25-7-13(6) (Supp. 2001) (emphasis added). It is difficult to imagine what might be meant by "all officers" unless it is those public officials in addition to circuit clerks whose records may need

to be copied and certified. Indeed, it makes little sense for a circuit clerk to get one fee for copies of records generated in that court and a clerk performing the identical function for another court receive a different fee. We find no corresponding provision in the chancery clerk statute that sets a fee for making copies of records for appeal. There is a chancery clerk provision statute for certifying copies of filed documents. Miss. Code Ann. § 25-7-9 (1) (a) (Rev. 1999). That would appear to apply to such certifications as might be needed if someone wanted a copy of a filed deed or will. Another section permits a 50 cents per page fee for making a copy of any filed document. Miss. Code Ann. § 25-7-9(1)(e) (Rev. 1999). That would be the charge whenever a chancery clerk is making an uncertified copy of a recorded document to give to a member of the public.

¶30. The relationship between these statutes on chancery and circuit clerk fees can be better understood by a review of the initial enactment from which both statutes are derived. In 1928, the Mississippi legislature adopted a comprehensive "Act fixing [the compensation for sheriffs;]. . . the fees, salaries, and compensation of the chancery clerks, the county auditor, and clerks of the boards of supervisors; and the fees, salaries and compensation of the clerks of the circuit courts . . . ." 1928 Miss. Laws ch. 87 caption. Section 1 of the 1928 Act contained multiple paragraphs setting fees and other compensation for sheriffs. A caption appeared immediately before the entire section, stating "Sheriffs: compensation." Later paragraphs of Section 1 also had captions, such as "Fees," "Sheriffs: additional fees," and "Sheriff's fees in criminal cases in which the state fails." Similarly, Section 2 which provided lengthy compensation and fee rules for chancery clerks, had the initial heading "Chancery clerks: compensation." Subsequent paragraphs of Section 2 had headings such as "Filing and recording fees allowed," and "Fees for attending court." The first heading for Section 3 was "Circuit clerks: compensation." Later paragraphs had headings as well. The last paragraph in Section 3, all of which until then specifically referred in the heading or text to circuit clerks, was entitled "All officers: certification fees allowed." It is there that the predecessor language to section 25-7-13 (6) was first enacted. Though the rate of compensation has changed (in the pre-photocopy technology version, the charge was by the word), the relevant language is otherwise identical. It closed by saying "and the same fees shall be allowed to all officers for making and certifying copies of records or papers which they are authorized to copy and certify." 1928 Miss. Laws ch. 87, at 119. The purpose is evident. The Act set the fees and compensation for a variety of offices, usually did so in specific sections for specific officials, but in the paragraph relevant for us dealt collectively with all officers making official transcripts.

¶31. The only specific statute relating to making copies of final records and transcripts may be in a statute generally related to circuit clerks, but it specifically provides that all other officers may charge the same. Therefore, section 25-7-13(6) is the appropriate statute for the chancery clerk.

¶32. We note that the chancery clerk on October 13, 1999, sent an estimate of costs to Mr. McDonald, asserted that $2.00 per page under the statute just named was the correct charge, but informed him that a charge of $1.00 per page that had earlier been quoted to Mr. McDonald would be honored. For whatever reason, on March 27, 2001, the chancery clerk sent a notice to the Clerk of the Supreme Court and Court of Appeals that the amount tendered by Mr. McDonald was unsatisfactory and that an additional deposit -- based on $2.00 per page -- would need to be paid. M.R.A.P. 11(b)(2) (supplemental request may be made by clerk and ruled on by trial judge). It is this extra charge that is challenged by Mr. McDonald.

¶33. Mr. McDonald initially deposited $150.00. When the chancery clerk in October 1999 informed him that he would honor the $1.00 per page charge, the amount necessary for costs would have been $701.00, less the $150.00 already paid. Apparently, the extra amount was not paid because in 2001 when the $2.00

per page charge was submitted, the chancery clerk indicated that only $150.00 had been received. On May 18, 2001, the special chancellor granted the clerk's request.

¶34. We consider the chancery clerk's October 1999 statement that it would honor the $1.00 per page charge to have been an offer. Had Mr. McDonald paid the lower amount at that time, we have serious question of whether the clerk later could increase the estimate of costs based on the higher per page charge and thereby require an additional payment. However, since Mr. McDonald allowed 17 months to pass without paying anything more than his personal estimate of $150.00 for the appeal, we do not find an abuse of discretion in the trial court's decision to require Mr. McDonald to pay the statutorily required amount.

¶35. The other claim by Mr. McDonald is that the chancery clerk has not posted his fees in a conspicuous place as required by law. Miss. Code Ann. § 11-53-79 (1972). According to that statute, the clerk is not entitled to receive a fee for "any service rendered during the time of such failure" to post the fee schedule. *Id.* However, Mr. McDonald does not point us to any part of the record in which evidence appears of a failure to comply with this statute. There is a letter in the record that Mr. McDonald sent to the chancery clerk, asserting that his "latest visit to your office reveals you have not complied with this mandatory legislative code." A party's assertion in an unsworn letter does not prove the existence of any stated fact. Having failed to present evidence of such a failure to post a schedule, Mr. McDonald cannot avoid the payment of the fees.

### IV. Contempt Hearing

¶36. Mr. McDonald was found in contempt on two counts of the court's order that had been entered on April 14, 1999. A finding of contempt is proper when one party has "willfully and deliberately" disobeyed an order of the court. *Bredemeier v. Jackson*, 689 So. 2d 770, 777 (Miss. 1997). Contempt matters are committed to the sound discretion of the trial court and their resolution will not be disturbed absent a showing that a finding of contempt was not based on substantial credible evidence. *Caldwell v. Caldwell*, 579 So. 2d 543, 545 (Miss. 1991).

¶37. The first contempt motion, which was filed on May 7, 1999, alleged that Mr. McDonald unreasonably interfered with Mrs. McDonald's visitation rights. The second contempt motion was filed on June 9, 1999. It dealt with Mr. McDonald's refusal to cooperate with his ex-wife in establishing dates for the extended visitation as required by the April 14, 1999 court order. The chancellor found Mr. McDonald in direct contempt for each charge. Mr. McDonald argues that the lower court committed error by denying him the right to have a jury trial.

¶38. Generally there is no right to a jury trial in chancery court. The constitutional right to a jury trial would arise if Mr. McDonald was to be tried on a serious criminal charge. *Walls v. Spell*, 722 So. 2d 566, 572 (Miss. 1998). If the offense has a maximum sentence of no more than six months incarceration, that is generally considered a petty crime. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543 (1989). Since the sentence for criminal contempt in Mississippi has no statutory limit, "we look to the penalty actually imposed as best evidence of the seriousness of the offense." *Walls*, 722 So. 2d at 572. Here, no sentence was imposed. Mr. McDonald was required to pay $1500 attorneys fees and court costs. We do not find that a substantial enough penalty as to be the equivalent of a sentence for which a jury trial is necessary.

¶39. This finding of contempt was only civil and not criminal if it was a mechanism to acquire obedience to

an order of the court. *Common Cause of Mississippi v. Smith*, 548 So. 2d 412, 415 (Miss. 1989). For example, incarcerating someone only until the detainee agrees to abide by a court order would be civil contempt. Criminal contempt is punishment for past misbehavior; civil contempt is encouragement for future proper behavior. Since Mr. McDonald was not incarcerated at all, it is difficult to categorize this finding. Regardless, no jury trial was needed.

¶40. The record is replete with instances in which Mr. McDonald's behavior was deliberate. The chancellor's decision to hold Mr. McDonald in direct contempt of the April 14 order is supported by substantial evidence. The chancellor determined that Mr. McDonald intended to refuse to comply with the modification of the divorce decree and would make a mockery of the legal system in doing so. The evidence was sufficient for a finding of contempt. Awarding costs and attorneys fees because a contemptuous party has necessitated the holding of a hearing to enforce a prior order of the court is appropriate. *Mount v. Mount*, 624 So. 2d 1001, 1005 (Miss. 1993). That was the only significant effect of the finding of contempt.

¶41. Mr. McDonald again challenges this chancellor's authority for ruling at all. He alleges that the chancellor's power was extinguished upon the appeal of the April 14, 1999 order. An appeal without a supersedeas bond does not stay an order of the court; violation of the appealed order subjects a party to contempt proceedings. *Vockroth v. Vockroth*, So. 2d 459, 463 (Miss. 1967).

¶42. Mr. McDonald asserts that Special Chancellor Griffin did not have jurisdiction to preside over the contempt proceedings. "We have held that the duration of a special judge's appointment will be determined by the order of appointment." *Barton v. Barton,* 726 So. 2d 163, 166 ( Miss. 1998). The appointment order filed on January 11, 1999, authorized Special Judge William L. Griffin to "preside and conduct proceedings in the above referenced case pursuant to and by the authority of Miss. Code Ann. Section 9-1-105." That statute, which provides for appointment of special chancellors, also provides that the appointment order "shall describe as specifically as possible the duration of the appointment." Miss. Code Ann. § 9-1-105 (8) (Supp. 2001). Though the specificity is limited, it would appear that the special chancellor's authority continues until the proceedings are concluded. The mere appeal of an order during ongoing proceedings did not extinguish the appointment. Matters of custody and failure to comply with visitation remained open, and as indicated below, several months later a temporary change in custody was ordered.

¶43. Mr. McDonald also asserts that the special judge was personally involved and biased, thereby preventing McDonald from receiving a fair trial on contempt. We find no evidence in the record of such bias. "A presumption of impartiality exists that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a 'reasonable doubt.'" *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135,1141(Miss. 2002 ). We find that Mr. McDonald has produced nothing more than mere allegations.

## V. Temporary Order Entered August 11, 1999.

¶44. Mr. McDonald's final assertion of error deals with the procedure underlying an order for a temporary change in custody of the two youngest children to their mother, entered on August 11, 1999. That order also granted Mr. McDonald visitation during the period of the temporary order, and required that he pay child support.

¶45. We find no procedural irregularity in the hearing on the temporary order. The chancellor had announced at the end of a prior hearing on June 25, 1999, that he wanted after a home study had been conducted regarding both parents, to have a hearing on custody and other matters. After some delays, that hearing led to the order that is challenged. The special chancellor made appropriate findings for why he was temporarily changing custody, including Mr. McDonald's continuing interference with his former wife's visitation with the children who were in his custody.

¶46. What is not here for our review are any rulings since the temporary order. The order invited further motions to address custody and support issues. The impediment of the then-pending federal suit against the special chancellor has been removed. We find nothing to review about this explicitly temporary order entered three years ago. *Michael v. Michael*, 650 So. 2d 469, 471 (Miss. 1995) (appellate review of temporary orders is improper).

¶*47. **THE JUDGMENTS OF THE CHANCERY COURT OF LEE COUNTY AWARDING AN ADDITIONAL $1,106 IN NECESSARY COSTS FOR APPEAL, FINDING HOWARD CLAYBORNE MCDONALD, JR. TO BE IN CONTEMPT, AND MODIFYING THE FINAL DIVORCE DECREE ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

> **McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.**

> 1. The Supreme Court's official comment to the Rule provides that failure to give the notice "does not deprive the court of jurisdiction to decide the case." M.RC.P. 24 cmt. How that should be interpreted in light of *State v. Watkins*, which is cited in the comment, is unclear.