# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00790-COA

**DENNIS L. PEARSON**                                                                     **APPELLANT**

**v.**

**PATRICIA S. PEARSON BROWNING**                                               **APPELLEE**

DATE OF JUDGMENT:               11/05/2013
TRIAL JUDGE:                          HON. D. NEIL HARRIS SR.
COURT FROM WHICH APPEALED:    JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       DUSTIN NORMAN THOMAS
ATTORNEY FOR APPELLEE:        E. FOLEY RANSON
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       AWARDED RETIREMENT BENEFITS AND
                                ATTORNEY'S FEES TO APPELLEE FOR
                                CONTEMPT ACTION
DISPOSITION:                   AFFIRMED – 08/16/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Dennis L. Pearson appeals the judgment of the Jackson County Chancery Court stemming from his contempt action. Dennis argues: (1) the chancellor's entry of the October 13, 2005 agreed order of modification was invalid because neither Dennis nor his attorney signed the order; (2) his oral agreement to transfer an interest in land to his ex-wife was void as a matter of law; and (3) the chancellor should have recused himself.

¶2.     Finding no error, we affirm.

FACTS

¶3.     On April 30, 2002, Dennis and Patricia S. Pearson Browning were granted a divorce

on the ground of irreconcilable differences. The chancellor incorporated their agreement that covered child custody, child support, and property division, among other things, into the judgment. On May 22, 2013, Patricia filed a complaint for contempt against Dennis for failure to abide by the original divorce agreement. This appeal stems from that proceeding.

¶4. In order to give context to the current appeal, it is necessary to briefly discuss a previous trial and appeal between the parties. After the parties' divorce, they filed competing claims for contempt and were granted a modification to their 2002 agreement in open court on August 16, 2005. The chancellor directed that, within ten days, the parties present an order consistent with the agreement that was read into the record. The entry of the order was delayed by Hurricane Katrina, which struck the Mississippi Gulf Coast on August 29, 2005. Prior to its entry, the order was signed by Patricia and her attorney; however, neither Dennis nor his attorney signed the order, despite blanks provided for them to do so. The order was signed by the chancellor on October 13, 2005.

¶5. Dennis later instituted an action for contempt against Patricia on June 14, 2007, relating to custody and financial matters. Dennis amended his complaint to include Patricia's failure to refinance the marital home and failure to pay one-half of the medical bills of their minor child, as required by the original divorce decree. Patricia submitted a counterclaim arguing that Dennis had failed to deliver her a quitclaim deed to their marital home and failed to pay her portions of his civil service retirement, among other things. On February 2, 2009, all of Dennis's claims were dismissed by the chancellor, and the trial continued on Patricia's

claims only. The chancellor ruled in favor of Patricia. Dennis appealed that decision to this Court. This Court reversed and rendered the chancellor's judgment without prejudice because Dennis was never properly summoned to trial. *Pearson v. Browning*, 106 So. 3d 845, 852 (¶¶40-41) (Miss. Ct. App. 2012).

¶6. Turning back to the current proceedings, on May 22, 2013, Patricia filed a complaint for contempt based on the original divorce decree of the parties. On November 5, 2013, the chancellor again ruled in favor of Patricia. Dennis now appeals that decision.

## STANDARD OF REVIEW

¶7. "Appellate review of domestic[-]relation matters is limited. We will not reverse unless the chancellor abused his discretion, was manifestly in error, or applied an erroneous legal standard." *Day v. Day*, 28 So. 3d 672, 674 (¶4) (Miss. Ct. App. 2010) (internal citation omitted).

## DISCUSSION

### I. Agreed Order of Modification

¶8. Dennis argues that the October 13, 2005 "agreed" modification order was invalid because he did not agree to its terms and that neither he nor his attorney signed the order, as required by Uniform Rule of Chancery Court 5.03. Rule 5.03 states: "Every consent Judgment must be approved and signed by counsel for all parties to the suit who may be represented by counsel and interested in or affected thereby before being presented to the Chancellor for his signature. The Court may also require the parties to sign."

3

¶9.    Dennis argues that "[i]t is clear from looking at the transcript of August 16, 2005[,] . . . that the agreement read into the record differed from the agreement as later written in the October 13, 2005 'Agreed Order.'" However, Dennis makes no specific argument regarding what is different. The chancellor's findings of fact and conclusions of law on this issue state that the October 13, 2005 agreed order "is a mirror image of the parties' agreement as read into the record." Dennis only complains about the portion of the order granting Patricia all equity in the marital home. However, Dennis clearly agreed to this, as well as the other provisions of the order, during the August 16, 2005 hearing.

¶10.    During the August 16, 2005 hearing, Dennis's attorney stated into the record, "We have reached an agreement regarding all issues contained in the pleadings." Counsel then proceeded to detail modifications to the visitation schedule; the requirement that within sixty days, Patricia would refinance the marital home, Dennis would quitclaim his interest in the marital home to her, and she would be responsible for all mortgage payments on the home; the parties' agreement to waive any contempt issues regarding past-due bills or visitation; and each parent's right to claim one child as a dependent for tax purposes. The parties were then placed under oath and questioned by the chancellor about the modifications. Dennis's testimony was as follows:

Q.    [Dennis,] did you understand what the attorneys read into the record as your agreement?

A.    Yes, I do.

Q.    Was that your agreement?

4

A. That's correct.

Q. Do you understand that this agreement will be put into writing and will become the court's order?

A. Yes, I do.

Q. And you understand that failure to follow the agreement could result in a contempt charge against you?

A. I do.

¶11. In ruling on Dennis's motion to set aside the agreed order as invalid, the chancellor found Dennis's signature on the agreed order unnecessary as "surplusage," since the agreement had been read into the record and agreed to under oath by both parties. Also, in finding no merit to Dennis's argument that the order was inconsistent with the settlement agreement read into the record, the chancellor stated in his findings of fact and conclusions of law:

> The next day after the hearing (October 14, 2005), Dennis signed a Quitclaim Deed at a bank. This act by Dennis is consistent with the agreement of the parties in the transcript. This Quitclaim Deed transfers Dennis and Patricia's interest in the marital home and property to Patricia and her present husband, Steven. Dennis now claims that the property was conveyed to Patricia in exchange for Patricia waiving her interest in the Thrift Savings Plan and retirement. This is inconsistent with the August 16, 2005 transcript, the October 13, 2005 Agreed Judgment of Modification, and Dennis's act of conveyance in signing the Quitclaim Deed one (1) day after the Judgment.

¶12. This Court addressed a similar issue in *McDonald v. McDonald*, 850 So. 2d 1182 (Miss. Ct. App. 2002), *aff'd on cert.*, 876 So. 2d 296 (Miss. 2004). In *McDonald*, the wife filed for modification of the visitation schedule that was established at the time of her and

her husband's divorce. *Id.* at 1185 (¶3). A hearing was held, and both parties agreed to the new schedule. *Id.* at (¶4). However, the husband later refused to sign an agreed order. *Id.* at (¶5). The wife filed a "Motion for Entry of Agreed Order." *Id.* The chancellor signed and entered the order without the husband's or his counsel's signature. *Id.* at 1186 (¶5). The husband appealed, arguing the "agreed" order was invalid, as he did not sign it and did not agree with its terms. *Id.* at 1188 (¶18). We agreed with the husband "that there must be consent for a consent decree." *Id.* at (¶21). However, we also noted that "[a] consent judgment is in the nature of a contract," and is binding as such. *Id.* at 1189 (¶25). Despite the husband later changing his mind, we found that at the relevant time for consent—when the settlement terms were announced in open court—the husband did agree to the settlement, and his agreement at that time was sufficient to be contractually binding. *Id.*

¶13. Specifically, we held that

> the circumstances of announcing in open court the settlement of the dispute that is the purpose for that hearing, with a recital of the terms of the settlement into the record, followed by an agreement to end the hearing, reflects an intention to be bound at that time.

> Absent any showing that the final written order did not reflect the agreement announced in court, or any identification of a matter cognizable under [Mississippi] Rule [of Civil Procedure] 60 that could lead to setting aside a consent decree after [its] being entered—and neither showing exists here—we find that the parties were bound by their agreement even before it was reduced to a formal written order.

*McDonald*, 850 So. 2d at 1189 (¶¶25-26).

¶14. While neither Dennis nor his attorney signed the agreed order, the hearing transcript

6

reflects that Dennis understood the agreement that was read into the record and that he understood that the agreement would be put into writing and become the court's order. His attorney made no objection at the hearing to the entry of the order. The supreme court has found that proceedings recorded by a court reporter are sufficient to prove agreement by the parties. *See Samples v. Davis*, 904 So. 2d 1061, 1066 (¶15) (Miss. 2004) ("If parties reach an agreement, the agreement containing the terms should be signed by the parties' attorney(s) or in appropriate cases, the parties, *or recorded by the court reporter*." (Emphasis added)). Dennis has not provided any proof that the agreed order did not reflect the terms of the settlement agreement read into the record. Therefore, the settlement agreement announced in court and later reduced to writing was sufficient evidence of the parties' consent to be bound. This issue is without merit.

### II. Statute of Frauds

¶15. Dennis next argues that because the October 13, 2005 modification order was invalid, his oral agreement at the August 16, 2005 hearing to quitclaim Patricia his interest in the marital home is also invalid. He argues that without the signed modification order, the oral agreement is void as a matter of law, as it was never reduced to writing and violates the statute of frauds.

¶16. This issue is procedurally barred, as it is being raised for the first time on appeal. *Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012). Further, as we have found the agreed modification order valid and enforceable, this issue is without merit.

7

*III.    Recusal*

¶17.    Dennis argues that the chancellor was biased and erred in not recusing himself from hearing Dennis's motion.  As evidence of bias, Dennis cites to the chancellor's comment involving whether a Mississippi Rule of Civil Procedure 81 summons had been served.  With regard to service of process, the chancellor made a comment that if Dennis was not served, he was "going to go ahead anyway," and Dennis could take it up on appeal.  Dennis also points to the chancellor's denial of his counsel's pretrial ore tenus motion to withdraw from the case, which was denied.  Finally, Dennis cites to the chancellor's denial of his ore tenus motion for the chancellor's recusal, based on his belief that because the chancellor had previously been reversed on appeal, he could not be impartial.

¶18.    "[A] judge must disqualify when that judge's 'impartiality might be questioned by a reasonable person knowing all the circumstances including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party.'"  *Dillard's Inc. v. Scott*, 908 So. 2d 93, 98 (¶17) (Miss. 2005) (quoting Code of Judicial Conduct, Canon 3(E)(1)).  We "presume[] that a judge, sworn to administer impartial justice, is qualified and unbiased.  To overcome the presumption, the evidence must produce a 'reasonable doubt' about the validity of the presumption."  *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997).  We review a judge's refusal to recuse for manifest error.  *Id.*

¶19.    We find Dennis has not presented evidence to overcome the presumption that the chancellor was qualified and unbiased.  Despite Dennis's argument regarding the

8

chancellor's comment on service of process, we note that the chancellor later determined that Dennis had been properly served, and there was no further discussion on the issue. Further, Dennis has presented no evidence, only speculation, that the chancellor was biased because he denied Dennis's counsel's motion to withdraw or because the chancellor previously issued an opinion in this matter that was reversed on appeal. "Mere speculation is not sufficient to raise a reasonable doubt as to the validity of the presumption that the trial judge was qualified and unbiased." *Dillard's*, 908 So. 2d at 98 (¶21) (citation omitted). We find no evidence that the chancellor's impartiality would be questioned by a reasonable person; therefore, this issue is without merit.

¶20. **THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., NOT PARTICIPATING.**