# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01314-COA

**LISA HARDIN**                                                         **APPELLANT**

**v.**

**DERRY HARDIN**                                                        **APPELLEE**

DATE OF JUDGMENT:            01/07/2020
TRIAL JUDGE:                 HON. RHEA HUDSON SHELDON
COURT FROM WHICH APPEALED:   FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      PHILLIP LLOYD LONDEREE
ATTORNEY FOR APPELLEE:       RENEE M. PORTER
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 01/11/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Following a hearing regarding details of a wife's separate maintenance, the Forrest County Chancery Court entered a final judgment that set forth matters agreed to by the parties during a pretrial conference, ordered Derry Hardin to pay separate maintenance to his wife Lisa Hardin, and denied Lisa's request for attorney's fees. On appeal, Lisa challenges (1) the chancellor's inclusion of the parties' pretrial agreement in the final judgment; (2) the chancellor's denial of her request for attorney's fees; and (3) the chancellor's denial of her post-trial motion to reconsider. Finding no error, we affirm.

## FACTS

¶2.     The parties married in June 1983. After their separation in June 2013, Lisa filed a

complaint for separate maintenance and other temporary relief. Derry responded and moved to dismiss Lisa's complaint as frivolous. In February 2014, the chancellor entered an agreed temporary order on Lisa's complaint for separate maintenance.

¶3.     In March 2014, Lisa filed a motion for contempt and alleged that Derry had failed to uphold several of his obligations as set forth in the parties' February 2014 agreed order. In October 2014, the chancellor entered an order on Lisa's contempt motion and ordered Derry to comply with the terms of the temporary agreed order. In March 2015, Lisa filed a second contempt motion. She also moved to amend her separate-maintenance complaint to include fault-based grounds for divorce. In September 2016, however, Lisa moved to withdraw her fault-based grounds for divorce or, alternatively, to strike her amended complaint. In November 2016, Derry filed his own fault-based divorce complaint against Lisa.

¶4.     Following a two-day hearing, the chancellor entered an April 16, 2018 order dismissing Derry's fault-based divorce complaint against Lisa. The chancellor also granted Lisa's request for separate maintenance but provided that the amount and form of Lisa's separate maintenance, along with her request for attorney's fees and her contempt claims against Derry, would be determined after further proceedings.

¶5.     On November 6, 2019, the chancellor held a hearing on the parties' remaining issues. At the start of the hearing, the chancellor made the following on-the-record statement:

> During conference with counsel and the parties, there have been some agreements reached today. First, Mr. Hardin will obtain quotes and . . . will cause the siding to be replaced at the marital home. He will also look into a water[-]treatment system for the water well or connecting that to community

water, and he's going to have those quotes and information about a loan -- if he has to get that -- within the next 60 days. Mr. Hardin will also replace the back doors when he does the siding on the marital home, and he will submit an updated [Uniform Chancery Court Rule] 8.05 financial statement within 14 days. Also, Mr. Hardin has life insurance -- term[-]life insurance that will be expiring in the next couple of months. And the Court is going to allow him the option not to renew that life insurance with the understanding that Ms. Hardin remains the beneficiary on any other policies that he has in place for life insurance and also with his retirement and that the parties will not dispose of any marital assets and will not make any withdrawals from the retirement that Mr. Hardin has without Court approval.

¶6. The parties raised no objections to the chancellor's recital of their agreed-upon issues and reminded the chancellor of two other matters that had been resolved during their pretrial conference. Although also not included in the chancellor's recital of the parties' agreed-upon matters, Lisa's attorney further noted at a later point in the hearing that Lisa had decided not to pursue her contempt claims against Derry.

¶7. Also during the hearing, Lisa's attorney provided testimony regarding the *McKee* factors to support Lisa's request for attorney's fees.[1] Lisa's attorney provided both the chancellor and Derry with a copy of his bill. The chancellor admitted the bill from Lisa's attorney as an exhibit and stated that Derry would have fourteen days to raise any objections

---

[1] As set forth in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), these factors include the following:

[T]he relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, . . . the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

to the bill. The chancellor also granted the request from Derry's attorney that within fourteen days Lisa was to submit a statement of the payments and contributions she had so far made toward her attorney's fees. Lisa's attorney agreed to submit the document within fourteen days and stated that Lisa had paid him a $7,000 retainer fee but had been unable to pay any further amounts.

¶8. The parties failed to provide the chancellor with a signed agreed order as instructed. On January 7, 2020, the chancellor entered her final judgment. The chancellor's judgment first set forth the issues the parties had "resolved by agreement prior to trial and [had] announced on the record . . . ." The chancellor then analyzed the factors established in *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993), to determine the amount and type of Lisa's separate maintenance.[2] After discussing the *Armstrong* factors, the chancellor stated that if Derry chose not to resume cohabitation with Lisa, he would be responsible for the following financial obligations: (1) "reasonable expenses associated with the maintenance of the marital residence and pool"; (2) "property taxes on the marital residence and

---

[2] The *Armstrong* factors include the following: (1) The parties' "income and expenses"; (2) The parties' "health and earning capacities"; (3) Each party's needs; (4) Each party's "obligations and assets"; (5) The length of the parties' marriage; (6) "The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care"; (7) The parties' ages; (8) The parties' standard of living, "both during the marriage and at the time of the support determination"; (9) Any tax consequences resulting from the support order; (10) The parties' fault or misconduct; (11) The parties' "[w]asteful dissipation of assets"; or (12) "Any other factor deemed by the court to be just and equitable in connection with the setting of spousal support." *Armstrong*, 618 So. 2d at 1280.

adjoin[in]g acreage"; (3) homeowner's and automobile insurance; (4) expenses for the maintenance and reasonable repair of Lisa's vehicle and any farm equipment; (5) medical insurance and existing life-insurance policies and any related premiums, co-pays, and deductibles; (6) up to $2,000 each year in out-of-pocket and/or non-covered medical expenses; (7) $2,500 a month in separate maintenance; and (8) an additional $500 on or before December 1 of each year.

¶9. With regard to Lisa's request for attorney's fees, the chancellor noted that neither Lisa nor her attorney had complied with the court's order to provide a statement of Lisa's payments or contributions toward her attorney's fees. As a result, the chancellor stated she was unable to determine whether Lisa's initial payment of $7,000 had been applied to the outstanding balance of her attorney's fees. Based on her inability to determine the exact amount of attorney's fees Lisa still owed, the chancellor denied Lisa's request.

¶10. On January 17, 2020, Lisa filed a motion to reconsider. Lisa challenged the final judgment's inclusion of those matters resolved by the parties during their pretrial conference. Because the parties had never provided the chancellor with a signed agreed order as instructed, Lisa argued the chancellor should strike the agreed-upon matters from the final judgment. Lisa especially took issue with the chancellor's statement that Lisa had agreed to withdraw her contempt claims against Derry. Lisa argued that she had not withdrawn her contempt claims but had agreed to hold them in abeyance until the chancellor entered a final judgment. Lisa also challenged the chancellor's denial of her request for attorney's fees.

5

Although she had failed to provide the chancellor with documentation of her payments toward her outstanding attorney's fees as instructed, Lisa asserted the chancellor had erred by denying her request. As an exhibit to her motion to reconsider, Lisa attached emails between the parties' attorneys regarding the wording of the proposed agreed order. In the email exchange, Lisa's attorney specified that any agreed order should note Lisa had chosen to voluntarily withdraw her contempt claims against Derry. Lisa's other exhibit to the motion to reconsider provided an itemized list of her attorney's expenses, her contribution toward those expenses, and the outstanding balance of her attorney's fees.

¶11. On October 30, 2020, the chancellor entered her order disposing of Lisa's motion for reconsideration. The chancellor's order did not further address Lisa's request for attorney's fees. As for Lisa's remaining argument, the chancellor acknowledged that the parties' attorneys had failed to sign and provide an agreed order as instructed. The chancellor concluded, however, that no discrepancies existed between those matters resolved prior to the hearing and read into the record and those matters included in the final judgment. The chancellor therefore denied Lisa's motion to reconsider. Aggrieved, Lisa appeals from both the final judgment and the order denying her post-trial motion.

## STANDARD OF REVIEW

¶12. This Court's "limited standard of review when analyzing a chancellor's determinations in domestic-relations matters" is well established. *Gilmer v. Gilmer*, 297 So. 3d 324, 331 (¶13) (Miss. Ct. App. 2020). Where "substantial credible evidence" supports

6

a chancellor's findings, we decline to reverse "unless the chancellor abused [her] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.* (quoting *Branch v. Branch*, 174 So. 3d 932, 937 (¶9) (Miss. Ct. App. 2015)). We review questions of law de novo. *Id.*

## DISCUSSION

### I. The Parties' Pretrial Agreement

¶13. Following the November 6, 2019 hearing, the parties failed to comply with the chancellor's directive to provide a signed agreed order. Nevertheless, on January 7, 2020, the chancellor entered her final judgment, which set forth the matters agreed upon by the parties during their pretrial conference and then adjudicated the remaining issues. On appeal, Lisa makes no assertion that the final judgment failed to accurately reflect the terms of the parties' agreement. Instead, she contends the chancellor erroneously included the terms of the pretrial agreement in the final judgment because the parties neither approved of nor consented to the judgment.

¶14. Mississippi Uniform Chancery Court Rule 3.09 provides that "[o]ral agreements of counsel made in the presence of the Court must be recorded by the Court Reporter, or an order entered in accordance therewith approved by counsel. All other agreements should be reduced to writing and filed among the papers in the case." *See also Samples v. Davis*, 904 So. 2d 1061, 1066 (¶15) (Miss. 2004) ("If parties reach an agreement, the agreement containing the terms should be signed by the parties' attorney(s) or in appropriate cases, the

7

parties, *or recorded by the court reporter*." (emphasis added)). As this Court has previously

held,

> the circumstances of announcing in open court the settlement of the dispute that is the purpose for that hearing, with a recital of the terms of the settlement into the record, followed by an agreement to end the hearing, reflects an intention to be bound at that time.
>
> Absent any showing that the final written order did not reflect the agreement announced in court, or any identification of a matter cognizable under Mississippi Rule of Civil Procedure 60 that could lead to setting aside a consent decree after its being entered—and neither showing exists here—we find that the parties were bound by their agreement even before it was reduced to a formal written order.

*Pearson v. Pearson Browning*, 200 So. 3d 1080, 1083 (¶13) (Miss. Ct. App. 2016) (quoting

*McDonald v. McDonald*, 850 So. 2d 1182, 1189 (¶¶25-26) (Miss. Ct. App. 2002)).

¶15. Here, Lisa correctly notes that the parties never approved by signature an order

memorializing their pretrial agreement. We find, however, that the chancellor announced in

open court and dictated into the record the specific terms of the parties' pretrial agreement.

Thus, the record contains a transcript memorializing the terms of the agreement. In addition,

after the chancellor's recitation, the parties raised no objections and even reminded the

chancellor of additional terms to which they had agreed. On appeal, Lisa asserts no

argument, nor offers any proof, that the chancellor's final judgment failed to accurately

reflect the parties' pretrial agreement, and upon review, we find no discrepancies between

those terms announced on the record during the hearing and those terms memorialized in the

final judgment. As a result, we find this assignment of error lacks merit.

## II.     Lisa's Request for Attorney's Fees

¶16.    Lisa also asserts the chancellor erroneously denied her request for attorney's fees. Chancellors are given broad discretion in their grant or denial of requests for attorney's fees. *Gilmer*, 297 So. 3d at 331 (¶14). "Generally, a chancellor should only award attorney's fees where the moving party shows an inability to pay." *Id.* at 339 (¶53). And "[b]efore granting or denying attorney's fees, a chancellor must apply the *McKee* factors." *Id.*

¶17.    During the hearing, the chancellor heard testimony in support of Lisa's request for attorney's fees and admitted into evidence an itemized bill from Lisa's attorney. The chancellor also ordered Lisa's attorney to submit evidence of Lisa's payments and contributions toward her attorney's fees within fourteen days of the hearing. Although Lisa's attorney testified that Lisa had only paid him a $7,000 retainer fee, he failed to subsequently provide the chancellor with the requested documentation of Lisa's payments.

¶18.    In her final judgment, the chancellor specifically discussed each of the *McKee* factors. In so doing, the chancellor found that Lisa's attorney had testified about his hourly rate but had never presented evidence as to whether his hourly rate was "usual or customary in the community for such legal services." The chancellor also noted Lisa's failure to provide any statement regarding her payments or contributions toward her attorney's fees. Without such evidence, the chancellor concluded she could not accurately determine the outstanding balance of Lisa's attorney's fees. Because we find no abuse of discretion or manifest error, we affirm the denial of Lisa's request for attorney's fees.

### III. Lisa's Motion to Reconsider

¶19. In her motion to reconsider the final judgment, Lisa requested that the chancellor make additional findings of fact and conclusions of law under Mississippi Rule of Civil Procedure 52(a). Alternatively, Lisa sought an amendment of the final judgment or the grant of a new trial under Mississippi Rule of Civil Procedure 59. On appeal, Lisa asserts the chancellor erroneously denied her post-trial motion because the chancellor failed to make specific findings of fact and fully apply each of the *McKee* factors. Lisa also maintains her argument that the parties never agreed to the chancellor's final judgment prior to the judgment's entry.

¶20. As previously discussed, the chancellor's final judgment addressed each of the separate *McKee* factors, and we can find no reason on appeal to require the chancellor to provide further findings of fact or conclusions of law under Rule 52(a). As for Lisa's alternative request for relief under Rule 59(e), our caselaw requires that she show "(i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." *In re Moore*, 297 So. 3d 316, 323 (¶21) (Miss. Ct. App. 2020) (quoting *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004)). We find, however, that Lisa has failed to sufficiently establish any of these factors in her appellate brief and simply reasserts her prior assignments of error. Because we have already addressed Lisa's prior arguments and have determined they lack merit, we likewise find no error in the chancellor's denial of Lisa's motion to

10

reconsider.

### IV. Derry's Request for Appellate Attorney's Fees

¶21. In his appellate brief, Derry requests attorney's fees and the costs of appeal but cites no legal authority to support the request. Our caselaw clearly provides that the failure to cite supporting legal authority precludes consideration of an issue on appeal. *Greer v. Greer*, 312 So. 3d 414, 415 (¶9) (Miss. Ct. App. 2021). In addition, the Mississippi Supreme Court has held parties must request appellate attorney's fees in a motion that complies with Mississippi Rule of Appellate Procedure 27(a). *Latham v. Latham*, 261 So. 3d 1110, 1115-16 (¶¶22-24) (Miss. 2019). Because Derry has not provided supporting legal authority for his request and has not filed a motion under Rule 27(a), we dismiss without prejudice his request for appellate attorney's fees. Derry "may renew his request in a motion that complies with Rule 27(a)[,]" but "[a]ny such motion should be filed before the mandate issues." *Brown v. Hewlett*, 281 So. 3d 189, 200-01 (¶45) (Miss. Ct. App. 2019).

### CONCLUSION

¶22. Upon review, we find no manifest error or abuse of discretion. We therefore affirm the chancellor's final judgment.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**